**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2186
_____

KONG GAO CHEN,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A099 683 886)
Immigration Judge:  Honorable Margaret Reichenberg

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 9, 2010

Before:  BARRY, GREENAWAY and STAPLETON, <u>Circuit</u> <u>Judges</u>

(Opinion filed: July 12, 2010)
_____

OPINION
_____

PER CURIAM

       Kong Goa Chen petitions for review of a decision of the Board of Immigration

Appeals ("BIA") dismissing his appeal of an Immigration Judge's ("IJ") decision denying

his applications for relief from removal.  We will deny the petition for review.

Chen is a native and citizen of China who lived in Changle City, Fujian Province. Chen entered the United States in May 2005 without a valid entry document. In March of the following year, Chen filed applications for asylum under Immigration & Nationality Act ("INA") § 208(a), 8 U.S.C. § 1158(a), withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and for protection under the Convention Against Torture, 8 C.F.R. §§ 1208.16(c), 1208.18, claiming a fear of persecution on account of his violation and opposition to China's population control policies, and for being smuggled out of the country.

A hearing on the merits was held on May 27, 2008. Chen testified that he married his wife on December 26, 1997, and they had a son in November 1998. Joint Appendix (hereafter "App.") at 146. Chen left the country after his wife, who has remained in China with their son, was forcibly taken away for an abortion. Id. at 150. Chen recounted that, two months after the birth of their son, the family planning cadres required his wife to have an IUD inserted and to report for periodic check-ups. Id. at 152. In October 2001, they hired a private doctor to remove the IUD. Chen's wife became pregnant the following month and went into hiding at her mother's home. Id. at 153. Officials went to Chen's house in January 2002 looking for his wife to notify her to report for her IUD checkup. When the cadres discovered that she was not there, they tried to force Chen to tell them her whereabouts. The cadres warned Chen that he would be held responsible if his wife failed to report. Id. at 154. After a verbal disagreement, the cadres

2

left and Chen went to work. Id. at 155-56.

The cadres eventually learned about Chen's wife's pregnancy and where she was staying. Chen testified that on March 12, 2002, his wife was taken from her mother's house to a local hospital where an abortion was performed. She returned home two days later. When Chen was informed of what had happened, he became very upset and went to the family planning brigade to make an inquiry as to the reasoning behind the recent events. Once there, Chen argued with one cadre in particular who threatened to arrest him if he continued the verbal altercation. Chen left without incident. Id. at 157-59. According to Chen, his wife was then fitted with another IUD, and they were assessed a fine in the amount of 6000 RMB. When the cadres came to collect payment for the fine two days later, Chen informed them that he did not have the money. To avoid the family planning officials, Chen left his village shortly thereafter to work in another area of China. After living in the Fuzhou area for a couple of years, Chen left for the United States. Chen claims that the fine remains unpaid. Id. at 160. Chen stated that he fears he will be arrested if he returns to China because of the unauthorized pregnancy and the unpaid fine.

The IJ ruled that, while credible with respect to the claim of his wife's forced abortion, Chen was not eligible for asylum on that basis under Matter of J-S-, 24 I. & N. Dec. 520 (A.G. 2008). In considering whether Chen was eligible for relief based on his own opposition to China's family planning policies, the IJ concluded that Chen's

3

argument with the cadre in 2002, the cadre's threat of arrest during the argument that ensued after the abortion, and the ultimate imposition of a fine did not rise to the level of persecution. Insofar as Chen claimed a fear of future persecution on account of his "other resistence" to China's coercive family planning policy (e.g., his refusal to pay the fine imposed despite the cadres' ensuing threat of arrest), the IJ found that Chen had not presented a credible claim. In particular, the IJ found that Chen's testimony regarding the threat of arrest for failure to pay the fine was not included in his asylum application and, further, was not corroborated by the letter submitted from his wife. The IJ noted that the same held true for Chen's claim that his wife was arrested and detained for one day in 2003 for failing to pay the fine.

As a result of this adverse credibility determination, the IJ concluded that Chen failed to established a well-founded fear of future persecution upon his return to China. Moreover, the IJ noted that, even if credible with respect to this claim, Chen's fear of government retribution was nonetheless not an objectively reasonable one given the fact that his wife has had no problems in China, save one minor incident in 2003. Because Chen failed to meet his burden of establishing a well founded fear of future persecution on account of his "other resistence" to China's family planning policy, the IJ concluded that he failed to meet the higher burden necessary for withholding of removal. Finally, having offered no action by the Chinese government that could be considered torturous toward him, the IJ rejected Chen's CAT claim as well. The IJ thus denied Chen's

4

requests for relief and ordered him removed to China.

The BIA dismissed Chen's appeal in an Order issued on March 31, 2009. Given this Court's opinion in Lin-Zheng v. Att'y Gen., 557 F.3d 147 (3d Cir. 2009) (en banc), the BIA agreed that, even if credible, Chen cannot establish eligibility for asylum or withholding of removal due to the claimed treatment of his spouse in connection with a violation of China's family planning policy law. As for the IJ's adverse credibility finding, the BIA concluded that the finding was not clearly erroneous, especially given Chen's inability to persuasively explain the noted inconsistencies and omissions when afforded the opportunity to do so. App. at 4

Moreover, as did the IJ, the BIA noted that – the credibility finding notwithstanding – the incidents recounted by Chen do not rise to the level of past persecution nor do they constitute a basis for a well-founded fear of future persecution on account of "other resistence." Because Chen failed to meet the higher standard for asylum, the BIA concluded he could not meet the standard for withholding of removal. Finally, despite the fact that he did not raise any arguments regarding the CAT claim on appeal, the BIA nonetheless noted in its conclusion Chen's failure to demonstrate that he is "more likely than not" to be tortured if returned to China. Chen has timely petitioned for review of the BIA's decision.

We will deny the petition for review. We have jurisdiction under 8 U.S.C. § 1252(a)(1), (b)(1). Where the BIA adopts the findings of the IJ and discusses some of the

5

bases for the IJ's decision, we have authority to review both decisions. Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). An applicant bears the burden of proving eligibility for asylum. Shardar v. Att'y Gen. of U.S., 503 F.3d 308, 312 (3d Cir. 2007). The applicant may demonstrate such eligibility by showing either past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. See INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). Significantly, "persecution connotes extreme behavior, including threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Ahmed v. Ashcroft, 341 F.3d 214, 217 (3d Cir. 2003) (quotations omitted). It "does not include all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." Id. (quotation omitted).

In the absence of evidence of past persecution, the applicant must demonstrate a subjective fear of persecution through credible testimony that his fear is genuine, Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003), and the applicant must show that a reasonable person in his circumstances would fear persecution if returned to the country in question. See id. The BIA's findings in this regard "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). See also Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Under this deferential standard, Chen must establish that the evidence does not just support a contrary conclusion but compels it. See Gao v. Ashcroft, 299 F.3d

266, 272 (3d Cir. 2002).

The more exacting withholding of removal standard requires an alien to show by a "clear probability" that his life or freedom would be threatened on account of a protected ground in the proposed country of removal. Immigration & Naturalization Serv. v. Stevic, 467 U.S. 407 (1984). See also Immigration & Naturalization Serv. v. Cardoza-Fonseca, 480 U.S. 421, 430 (1987) ("would be threatened" standard has no subjective component).[1]

We recently held that there is no automatic refugee status for spouses or unmarried partners of individuals subjected to coercive population control policies. Lin-Zheng v. Att'y Gen., 557 F.3d at 157. However, spouses remain eligible for relief if they can establish their own persecution for resisting China's coercive reproductive policy or a well-founded fear of future persecution for that resistance. See 8 U.S.C. § 1101(a)(42). We agree with the BIA that Chen is unable to make such a showing.

Chen challenges the agency's credibility determination and contends that he has established his eligibility for relief notwithstanding the adverse credibility determination. We disagree. Initially we note that, given the record evidence in this case, we are unable to hold that any reasonable adjudicator would be *compelled* to conclude that Chen

---

[1] We do not read Chen's brief to set forth any issue with respect to the denial of his CAT claim. See Lie v. Ashcroft, 396 F.3d 530, 532 n.1 (3d Cir. 2005) (issue deemed waived where no argument, other than mere mention of denial of claim, is included in appeal brief).

testified truthfully about the fine levied against him and his wife.

While Chen testified that he refused to pay the fine, neither his asylum application nor the letter written by his wife set forth such an assertion. See App. at 270, 365. In fact, and contrary to any contention that the amount of the fine was "intrinsically persecutory," he claimed in his asylum application that he and his wife were "forced to pay a fine" as a result of their unauthorized second pregnancy. See id. at 365. Likewise, there were noted discrepancies and inconsistencies between Chen's testimony regarding the pressures exerted on him and his wife by the Chinese officials' attempts to collect payment of the fine and the supporting relief documents. See id. at 70, 86-90. Moreover, as the IJ observed, see id. at 176-179, when Chen was questioned about the fine, his testimony on the issue was evasive and unresponsive, making him out to be – at times – a difficult witness. See 8 U.S.C. § 1158(b)(1)(B)(iii) ("Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant...").

Finally, we agree with the BIA and the IJ that – even assuming a favorable credibility determination on the fine issue – the harm that Chen suffered did not rise to the level of past persecution nor does it constitute a basis for finding a well-founded fear of future persecution. While Chen's complaints to the cadres and arguments about his wife's abortion with family planning officials may constitute "other resistance," the record does not compel a finding that his experiences based on that resistance rise to the

level of persecution. In fact, Chen's encounters with the cadres were fairly uneventful. Additionally, while Chen claimed that a fine totaling 6000 RMB was imposed against him, he did not allege that the fine was so onerous that it threatened his life or freedom. See Li v. Att'y Gen., 400 F.3d 157, 168 (3d Cir. 2005). Moreover, we cannot conclude that the short detention of his wife back in 2003 was sufficiently severe such that Chen would now have a reasonable fear that more drastic collection measures amounting to persecution await him.

Because Chen cannot satisfy the asylum standard, the BIA correctly concluded that he cannot satisfy the more difficult withholding of removal standard. See Zubeda, 333 F.3d at 469-70. Accordingly, we will deny the petition for review.