NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1830
_____

HERNAN SINDICUE-HERRERA,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent
_____

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A097-447-406)
Immigration Judge:  Honorable Annie S. Garcy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 19, 2011

Before:  RENDELL, VANASKIE and GARTH, Circuit Judges.

(Opinion filed: October 25, 2011)
_____

OPINION OF THE COURT
_____

PER CURIAM

Hernan Sindicue-Herrera seeks review of a Board of Immigration Appeals (BIA) decision that denied his motion to reopen removal proceedings. Finding no abuse of discretion by the BIA, we will deny the petition for review.

I.

Sindicue-Herrera, a native and citizen of Colombia, entered the United States in December 1998 and overstayed the time permitted by his visitor visa. Sindicue-Herrera's original attempt to block his removal—by claiming that he feared persecution and torture at the hands of the Revolutionary Armed Forces of Colombia (FARC)—was rejected by the agency. He was ordered removed to his native country by final order of the BIA dated June 24, 2008. We denied Sindicue-Herrera's subsequent petition for review. See Sindicue-Herrera v. Att'y Gen., 336 F. App'x 266 (3d Cir. 2009).

More than two years after the issuance of its final order of removal, Sindicue-Herrera filed with the BIA a motion to reopen removal proceedings. The motion was predicated on alleged recent threats to family members and alleged new evidence of deteriorating conditions in Colombia. To substantiate his allegations, Sindicue-Herrera submitted an "interrogatory" from his brother-in-law, Anyelo Cañon Rodriguez, stating:

> Today, November 3, 2009, an unknown person called me [on] my cell and I [was] told to go to Mantagua immediately. I headed to the place where I had quoted [sic] to be, there two people approached me. One of them . . . I saw in his waistband the grip of a firearm . . . They asked me if I was the

2

> President of [the] Communal Action Board and I said yes . . . then they gave me 24 hours to leave the town and I asked them what would happen[] to me if I'd not leave town. They told me that they would order military action against me.

(AR 64.)

Sindicue-Herrera also submitted a certification from the mayor of his hometown—Suaza, Colombia—stating that Anyelo "has been forced to move from this Township by reason of death threats against him by illegal armed forces." (AR 71.) That certification was buttressed by another, in which a local government official certified that Anyelo and his family were evaluated for and placed in "the Register of Displaced Population." (AR 68.) To substantiate his allegations that conditions had worsened in Colombia since his removal hearing in 2006, Sindicue-Herrera submitted a 2009 country report from the U.S. Department of State, a then-recent article from the Human Rights Watch website, and a 2010 Amnesty International country report. (AR 86-116.)

In a March 3, 2011 decision, the BIA denied the motion to reopen as untimely and not subject to any time-bar exceptions. This petition for review followed.

## II.

We have jurisdiction under 8 U.S.C. § 1252. Kucana v. Holder, --- U.S. ---, 130 S. Ct. 827, 840 (2010). We review for abuse of discretion the BIA's denial of a motion to reopen. See Pllumi v. Att'y Gen., 642 F.3d 155, 158 (3d Cir. 2011). "We give the BIA's decision broad deference and generally do not disturb it unless it is 'arbitrary, irrational, or contrary to law.'" Id. (citation omitted).

3

III.

In general, an alien may file only one motion to reopen, and he must file it with the BIA "no later than 90 days after the date on which the final administrative decision was rendered." 8 C.F.R. § 1003.2(c)(2). These time and number limitations are surmounted, however, when a motion to reopen removal proceedings—made by the alien in order "[t]o apply or reapply for asylum or withholding of deportation"—relies on "changed circumstances arising in the country of nationality . . . if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." 8 C.F.R. § 1003.2(c)(3)(ii)).

Motions to reopen under § 1003.2(c)(3)(ii) are thus susceptible to several potential exceptions, each one providing an independent ground for the BIA to deny reopening. Specifically, the BIA may deny reopening if it determines any of the following: that (1) the supporting evidence does not show changed country conditions; (2) the supporting evidence was available or discoverable during the original removal proceedings; (3) the supporting evidence is not material to the alien's underlying application for substantive relief; (4) the alien has failed to make a prima facie case for granting the underlying substantive application; or (5) the underlying substantive application, insofar as it requests discretionary relief (e.g., asylum), would be denied even if the motion to reopen were technically grantable. See Huang v. Att'y Gen., 620 F.3d 372, 389 (3d Cir. 2010).[1]

_____

[1] On the other side of it, we have noted the BIA's amenability to reopening "where the new facts alleged, when coupled with the facts already of record, satisfy us that it would

4

IV.

The BIA provided three separate reasons for denying Sindicue-Herrera's motion to reopen. It first determined that the motion was untimely under § 1003.2(c)(2). The BIA next determined that the evidence presented in support of Sindicue-Herrera's motion was insufficient to satisfy § 1003.2(c)(3)(ii), as he failed to show both changed country conditions and prima facie eligibility for immigration relief. To that end, the BIA reasoned as follows:

> The respondent's principal new evidence . . . is in the form of statements of his sister and brother-in-law in Colombia, reporting threats against them that caused them to relocate to Bogota. The declarants do not establish that FARC was the source of threats or that the threats were motivated by political beliefs. They do not claim that they were detained or physically harmed, or that they are not safe in Bogota. There is no evidence of threats against the respondent. The evidence is entirely inadequate to show a prima facie case for asylum or withholding of removal.

> The respondent has also submitted the Department of State country report for 2009. Such evidence, however, does not demonstrate materially changed circumstances since the respondent's 2006 hearing.

(AR 3-4) (internal citations omitted).

Sindicue-Herrera does not dispute that his motion to reopen failed to comply with the 90-day limitations period set forth in § 1003.2(c)(2). Rather, he contends in his opening brief that the BIA abused its discretion in denying the motion because the

---

be worthwhile to develop the issues further at a plenary hearing on reopening." Shardar v. Att'y Gen., 503 F.3d 308, 313 (3d Cir. 2007) (quoting In re L-O-G-, 21 I. & N. Dec.

documentary evidence submitted was new, material to his defensive applications to block removal, and did in fact demonstrate changed country conditions in Colombia. Sindicue-Herrera contends further that he "established a *prima facie* case for withholding of removal and for protection under the Convention Against Torture." (Pet'r Br. at 11.) Attempting to refute the BIA's characterization of his documentary evidence, Sindicue-Herrera argues that "the documents presented . . . confirmed that the threats made against petitioner's family were made by the FARC, resulting in the forced displacement of petitioner's sister and brother-in-law." (Pet'r Br. at 7.)

After careful consideration, we conclude that the BIA did not abuse its discretion in determining that Sindicue-Herrera's evidence was inadequate to show prima facie eligibility for immigration relief. The basis for Sindicue-Herrera's application for asylum, withholding of removal and relief under the Convention Against Torture is a fear of persecution and torture by the FARC. The documentary evidence supplied by his family and friends does not mention the FARC[2], and does not identify Anyelo's tormentors at all. Nor does the evidence indicate that any new threats have been made to Sindicue-Herrera specifically. Finally, the evidence does not suggest that Sindicue-Herrera would be unable to reside safely in Bogota if removed. Cf. Sindicue-Herrera, 336 F. App'x at 268 ("the BIA found that Sindicue-Herrera lived in Bogota for nine years

_____

413, 419 (BIA 1996)).

[2] The joint affidavit of Subelli Parra and Isidro Olaya mentions the FARC, but only in reference to the circumstances under which Sindicue-Herrera fled Suaza for Bogota decades ago. (AR 82.)

without facing torture at the hands of the FARC") (citing 8 C.F.R. § 1208.16(c)(3)(ii)) (evidence that the applicant could relocate to a part of the country of removal where he is not likely to be tortured is relevant in assessing the possibility of future torture).

We also conclude that the BIA did not abuse its discretion in rejecting Sindicue-Herrera's allegations of changed country conditions in Colombia. In particular, we have scrutinized the 2009 State Department report, and we fail to discern from it any meaningful difference from the 2005 State Department report we examined during our consideration of Sindicue-Herrera's first petition for review. (Compare, e.g., 2005 report, Administrative Record from C.A. No. 08-3153, pg. 126 ("The 41-year internal armed conflict continued between the government and Foreign Terrorist Organizations, particularly the [FARC] . . . The following human rights categories and societal problems were reported: unlawful and extrajudicial killings; insubordinate military collaboration with paramilitary groups; torture and mistreatment of detainees; overcrowded, underfunded, insecure prisons . . .") with 2009 report, AR 86 ("The 45-year internal armed conflict continued between the government and terrorist organizations, particularly the [FARC] . . . The following societal problems and governmental human rights abuses were reported during the year: unlawful and extrajudicial killings; insubordinate military collaboration with new illegal armed groups and paramilitary members who refused to demobilize; forced disappearances; overcrowded and insecure prisons; torture and mistreatment of detainees . . .")).

We do not suggest that the internal civil strife in Colombia is anything less than serious. But at the same time, we see no indication that conditions have gone from bad to worse between 2005 and 2009. See Pllumi, 642 F.3d at 161 (alien's evidence did not "indicate 'meaningfully changed country conditions' after 2005, when the case was before the IJ. Rather, [it suggested] that the conditions described have persisted").

## V.

Accordingly, for the reasons given in this opinion, the petition for review will be denied.