PRECEDENTIAL
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4454
_____

TONIN PLLUMI,
                              Petitioner,

v.

ATTORNEY GENERAL OF
THE UNITED STATES,
                              Respondent.
_____

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA 1:A078-275-693)
Immigration Judge: Honorable Miriam Mills
_____

Argued
February 7, 2011

Before:   JORDAN, GREENAWAY, JR. and STAPLETON,
            *Circuit Judges*.

(Filed: April 6, 2011)
_____

Nathan Weill  [ARGUED]
291 Broadway – Ste. 1610
New York, NY   10007
    *Counsel for Petitioner*

Jesse L. Busen   [ARGUED]
Eric H. Holder, Jr.
James A. Hunolt
Thomas W. Hussey
Justin R. Markel
United States Department of Justice
Office of Immigration Litigation, Civ. Div.
P.O. Box 878
Ben Franklin Station
Washington, DC   20044
    *Counsel for Respondent.*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Tonin Pllumi ("Pllumi")[1] is a native and citizen of Albania who entered the United States illegally and has been found removable pursuant to § 212(a)(6)(A)(i) of the

---

[1] Throughout the Administrative Record ("AR"), Mr. Pllumi is referred to as having the last name "Pllumaj." *See, e.g.* AR at 111. However, the IJ and BIA decisions, as well as his own brief, use the last name "Pllumi." We will therefore refer to the petitioner as Pllumi.

Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i). Pllumi has filed a petition for review based on the denial by the Board of Immigration Appeals ("BIA") of his motion asking the BIA to reopen his immigration proceedings and reconsider its decision declining to grant him asylum. The BIA denied his motion as untimely and chose not to exercise its authority to reopen the case *sua sponte*. Pllumi claims that the decision not to reopen requires remand because the BIA abused its discretion in determining that he had failed to demonstrate changed country conditions, and because the BIA predicated its refusal to reopen on the erroneous belief that healthcare concerns cannot be a basis for asylum. Although we conclude that the first of those arguments is meritless, there may be merit in the second. Because the basis upon which the BIA declined to exercise its authority to reopen *sua sponte* is unclear, we will grant the petition for review and remand so that the BIA can clarify its decision.

## I.  Background

Pllumi filed his original application for asylum and withholding of removal on June 19, 2002. In 2005, he supplemented that application and added a claim under the Convention Against Torture ("CAT"). In support of his application, Pllumi asserted that he had suffered persecution because of his active support of Albania's Democratic Party and because he is Catholic. Further, Pllumi alleged that he feared he would again be persecuted for his political and religious beliefs if he were returned to Albania. Ultimately, the Immigration Judge ("IJ") denied him all relief, holding

that Pllumi had failed to establish past persecution or a well-founded fear of future persecution.[2]

Pllumi appealed that decision and, on June 28, 2007, the BIA upheld the IJ's decision, concluding that, even if Pllumi were credible, he had not established a well-founded fear of persecution and thus had failed to establish his eligibility for relief. In its decision, the BIA also determined that Pllumi was ineligible for humanitarian asylum under either subsection (A) or (B) of 8 C.F.R. § 1208.13(b)(1)(iii) because, first, any persecution he had suffered in the past was not so severe as to constitute a "compelling reason" under subsection (A) for Pllumi to be unwilling or unable to return to his home country and, second, he had failed to establish that, as required by subsection (B), he would be subject to "other serious harm" upon removal. Because Pllumi had not established asylum eligibility, it followed that he had "also failed to satisfy the higher burden of proof required for withholding of removal." (AR at 127.) Additionally, the BIA held that Pllumi did not qualify for CAT protection because

---

[2] More particularly, the IJ found that Pllumi was not credible and thus, through testimony alone, was unable to lay the required foundation to establish past persecution. In addition, the IJ said that the persecution Pllumi allegedly suffered was no different than conditions suffered by all non-elite Albanians during the time in question and thus could not sustain a grant of asylum. The IJ also held that, even assuming that Pllumi's allegations established past persecution, changed country conditions – namely the Democratic Party's rise to power – rebutted any presumption of future persecution.

4

he had failed to establish that it was more likely than not he would be tortured upon return to Albania.

On September 17, 2009, Pllumi filed the motion that is the subject of this petition for review. He argued that, based upon evidence that he would suffer serious harm upon removal, the BIA should reopen his immigration proceedings and reconsider its prior decision. Specifically, Pllumi argued that he is entitled to humanitarian asylum because, regardless of whether he showed he had been or would be persecuted, he would suffer "other serious harm" if he were sent back to Albania because he would have to rely on Albania's healthcare system, which he says is poorer than the United States' system and insufficient to treat severe injuries he sustained in a hit-and-run car accident. He contended that the harm he faced from substandard medical care warranted the BIA's exercise of its authority to *sua sponte* reopen proceedings, even if his motion to reopen was deemed untimely. Pllumi also argued that the BIA should reopen his proceedings based on changed country conditions in Albania.[3]

On October 30, 2009, the BIA denied Pllumi's motion to reopen and reconsider, holding that it was untimely.[4] As to

---

[3] To substantiate his fear of returning to Albania, he provided letters allegedly written by Albanian officials indicating that Socialist Party members and sympathizers continued to threaten and place psychological pressure on members of the Democratic Party.

[4] As explained more fully herein, motions to reconsider and motions to reopen must be filed within 30

5

Pllumi's argument of harm from substandard healthcare, the BIA said:

> Pllumi's "concerns about his future healthcare on his return to Albania are not relevant to his persecution claim. We separately note that the respondent may address a request for humanitarian parole for medical treatment to the DHS, as requests for deferred action are within the jurisdiction of DHS, not the Immigration Courts or this Board."

(AR at 4.) The BIA concluded that Pllumi had "not presented an exceptional situation which would warrant reopening" and declined to exercise its authority to reopen his case *sua sponte*.

Pllumi has petitioned for review of the BIA's decision that he failed to demonstrate changed country conditions such that he would be eligible for reopening under 8 C.F.R. § 1003.2(c)(3)(ii). Alternatively, he contends that his petition should be granted because the BIA's refusal to *sua sponte* reopen his proceedings is predicated on an error of law.

---

days and 90 days respectively of the date of entry of a final administrative judgment. 8 U.S.C. § 1229a(c)(6)(B); 8 U.S.C. § 1229a(c)(7)(C)(i). The time limit for a motion to reopen, however, does not apply if the motion relates to an asylum application that is based upon changed country conditions and is supported by evidence that is material and was unavailable and could not have been discovered or presented at the earlier proceeding. 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c).

## II.    Standard of Review

In immigration cases, we review a denial of a motion to reopen or a motion to reconsider for abuse of discretion, regardless of the underlying basis of the alien's request for relief. *INS v. Doherty,* 502 U.S. 314, 323-24 (1992); *Ezeagwuna v. Ashcroft,* 325 F.3d 396, 409 (3d Cir. 2003). We give the BIA's decision broad deference and generally do not disturb it unless it is "arbitrary, irrational, or contrary to law." *Filja v. Gonzales*, 447 F.3d 241, 251 (3d Cir. 2006) (citation and quotation omitted).

However, motions that ask the BIA to *sua sponte* reopen a case[5] are of a different character. Because such motions are committed to the unfettered discretion of the BIA, we lack jurisdiction to review a decision on whether and how to exercise that discretion.[6] *Calle-Vujiles v. Ashcroft*, 320 F.3d 472, 475 (3d Cir. 2003). Nevertheless, in *Mahmood v. Holder* the United States Court of Appeals for the Second

---

[5] It seems a contradiction in terms to speak of motions seeking *sua sponte* action, since "sua sponte" means the doing of something "without prompting or suggestion," BLACK'S LAW DICTIONARY 1560 (9th ed. 2009), but that is the terminology.

[6] The Supreme Court in *Kucana v. Holder* specifically declined to express an "opinion on whether federal courts may review the Board's decision not to reopen removal proceedings *sua sponte*." --- U.S. ---, 130 S. Ct. 827, 839 n. 18 (2010). Thus, *Kucana* does not disturb our precedent dictating that we generally lack jurisdiction to review the BIA's decision not to reopen removal proceedings *sua sponte*.

Circuit suggested that there is jurisdiction to remand to the BIA for reconsideration when the BIA's decision to decline to exercise its *sua sponte* authority is based on a misperception of the relevant law. 570 F.3d 466, 469 (2d Cir. 2009). In *Mahmood*, the petitioner, a native of Pakistan, filed for an adjustment of status after his marriage to a U.S. citizen. *Id.* at 467-68. The Department of Homeland Security ("DHS") found that the marriage had been entered into for "the purpose of evading the immigration laws" and, as a result, declined to adjust Mahmood's status. *Id.* at 468. Mahmood was then granted a 120-day voluntary departure period with an alternative order of removal to Pakistan. *Id.* During that period, Mahmood divorced his first wife and, shortly thereafter, married another U.S. citizen and filed a motion to reopen his removal proceedings. *Id.* He also sought to stay his voluntary departure, saying, "he would not have agreed to [it] had he understood the terms." *Id.* The IJ held that Mahmood's motion was untimely and that *sua sponte* reopening would be futile because Mahmood was barred from adjustment of status for a period of ten years because of his prior failure to depart. *Id.* Mahmood then filed an appeal, which the BIA dismissed for essentially the same reasons. *Id.* at 469.

Later, the Supreme Court in *Dada v. Mukasey,* 554 U.S. 1 (2008), held that an alien could unilaterally withdraw from voluntary departure so as to pursue a motion to reopen. *Mahmood,* 570 F.3d at 470. That meant that Mahmood's stated desire to retract his decision to voluntarily depart would not have resulted in a ten-year bar to an adjustment of his status, as the BIA and IJ had thought when denying the motion to reopen. In light of *Dada*, the Second Circuit determined that it was error for the IJ and BIA to assume that

8

Mahmood's failure to timely depart from the United States "conclusively barred an adjustment of his status" and thus *sua sponte* reopening was not necessarily futile. *Id.* at 467. Recognizing that it generally lacked jurisdiction to review the BIA's decision to deny *sua sponte* reopening, the Second Circuit nevertheless remanded the case so that the BIA could reconsider it in light of *Dada. Id.* at 467, 471. The Court decided it could exercise jurisdiction "where the Agency may have declined to exercise its *sua sponte* authority because it misperceived the legal background and thought, incorrectly, that a reopening would necessarily fail." *Id.* at 469.

We have not previously had occasion to consider whether a question of law arising in the context of a request for *sua sponte* reopening, as was implicated in *Mahmood*, gives rise to our jurisdiction. As noted earlier, we typically cannot review a BIA decision to deny *sua sponte* reopening. That jurisdictional limitation is a product of precedent noting that there is simply no meaningful standard against which such a decision can be judged, because the BIA can make the decision for practically any reason at all;[7] its discretion is

---

[7] "No language in the [regulation enabling the BIA to reopen a proceeding *sua sponte*] *requires* the BIA to reopen a deportation proceeding under any set of particular circumstances." *Calle-Vujiles,* 320 F.3d at 475 (emphasis added) (quoting *Anin v. Reno,* 188 F.3d 1273, 1279 (11th Cir. 1999)). The BIA is generally allowed to reopen a case *sua sponte* in "exceptional situations" but no case has been found nor any pointed out by the parties that defines what is considered an "exceptional situation." *But cf. Cruz v. Att'y Gen.*, 452 F.3d 240, 250 (3d Cir. 2006) (suggesting that a claim under *In re Pickering*, 23 I. & N. Dec. 621 (BIA 2003),

9

essentially complete.[8]  *Calle-Vujiles*, 320 F.3d at 474-75; *see* 8 C.F.R. § 1003.2(a).

However, the discretionary character of a decision to reopen *sua sponte* does not mean that we are powerless to point out when a decision is based on a false legal premise. *Mahmood* demonstrates that, and we adopt the Second Circuit's reasoning in that regard.  If the reasoning given for a decision not to reopen *sua sponte* reflects an error of law, we have the power and responsibility to point out the problem, even though ultimately it is up to the BIA to decide whether it will exercise its discretion to reopen.  We therefore conclude that, when presented with a BIA decision rejecting a motion for *sua sponte* reopening, we may exercise jurisdiction to the limited extent of recognizing when the BIA has relied on an incorrect legal premise.  In such cases we can remand to the BIA so it may exercise its authority against the correct "legal background."  *Mahmood,* 570 F.3d at 469.  On remand, the BIA would then be free to deny or grant reopening *sua sponte,* and we would have no jurisdiction to review that decision.

---

involving the invalidation of a criminal conviction used to support the alien's removal charge has regularly been treated as an "exceptional situation" warranting *sua sponte* reopening, and stating that, "[w]here there is a consistent pattern of administrative decisions on a given issue, we would expect the BIA to conform to that pattern or explain its departure from it").

[8] We have no occasion now to consider whether there are constitutional boundaries that make such discretion less than entirely complete.

Here, it appears that the BIA may indeed have misperceived the relevant law.  We will therefore exercise jurisdiction to review the reasoning behind the BIA's refusal to *sua sponte* reopen Pllumi's proceedings.

## III.    Discussion[9]

### A.    Timeliness of Pllumi's Motion

Before considering the issue of *sua sponte* reopening, we address the timeliness of Pllumi's motion to reconsider and to reopen his proceedings, and we briefly examine the sufficiency of the evidence he proffered on changed country conditions.  A motion to reconsider must be filed within 30 days of the entry of the final administrative order of removal.  8 U.S.C. § 1229a(c)(6)(B).  Such a motion must claim "errors of law or fact" in the BIA's prior decision and be supported by pertinent authority.  8 U.S.C. § 1229a(c)(6)(C); 8 C.F.R. § 1003.2(b)(1).  The operative statute and regulation provide no exception to the time limitations on filing a motion to reconsider.

Motions to reopen must be filed within 90 days of the entry of the final administrative order of removal.  8 U.S.C. § 1229a(c)(7)(C)(i).  In contrast to the fixed time limit on a motion for reconsideration, however, the time limit for a motion to reopen does not apply if the motion relates to an asylum application and is based upon changed country

---

[9] The BIA had jurisdiction under 8 C.F.R. § 1003.2. We have jurisdiction pursuant to § 242 of the INA, 8 U.S.C. § 1252.

11

conditions proved by evidence that is material and was not available and could not have been discovered or presented at the previous proceeding. 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c). The burden of proof on a motion to reopen is on the alien to establish eligibility for the requested relief. 8 C.F.R. § 1003.2(c); *see Huang v. Att'y Gen.*, 620 F.3d 372, 389 (3d Cir. 2010) (noting that the BIA may deny a motion to reopen if it determines the alien has not established a prima facie case for the relief sought).

The BIA issued a final administrative order in Pllumi's case on June 28, 2007. Pllumi's combined motion to reopen and reconsider was not brought until September 17, 2009, well past the 30- and 90-day deadlines applicable to reopening and reconsideration respectively. Thus, the BIA correctly decided that Pllumi's motion was untimely, unless he proved with appropriate evidence that an adverse change in country conditions warranted reopening the case as to asylum. 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c). The BIA concluded that he did not, saying, "[the] evidence submitted does not demonstrate meaningfully changed conditions in Albania pertinent to [Pllumi's] claim from the conditions in Albania when the case was before the Immigration Judge in 2005." (AR at 4.)

The evidence Pllumi presented included letters from various individuals in Albania indicating that the area in which Pllumi's hometown was located was "under psychological pressures … by left extremists" (AR at 107), and that his hometown itself was from time to time terrorized by Socialists due to lack of police services (AR at 105). Those letters, however, do not indicate "meaningfully changed country conditions" after 2005, when the case was

before the IJ. (AR at 4.) Rather, they suggest that the conditions described have persisted. The other evidence proffered by Pllumi is no more convincing.[10] The BIA did not abuse its discretion in deciding that Pllumi's evidence of changed country conditions failed to support reopening his proceedings.

## B. The BIA's Refusal to *Sua Sponte* Reopen

Even though Pllumi's motion to reopen and reconsider was untimely, the BIA retains the discretion to reopen his proceedings *sua sponte*. 8 C.F.R. § 1003.2(a). As earlier noted, the BIA said the following when it declined to reopen Pllumi's case:

> Pllumi's "concerns about his future healthcare on his return to Albania are not relevant to his persecution claim. We separately note that the respondent may address a request for humanitarian parole for medical treatment to the DHS, as requests for deferred action are within the jurisdiction of DHS, not the Immigration Courts or this Board."

(App. at 4.) This can be read as disclaiming any power to reopen immigration proceedings if the argument for

---

[10] For example, Pllumi submitted information issued by the United States Department of State in 2005 and 2009 respectively that indicates little has changed in Albania during that time period. Further, it appears that the Democratic Party remains in power and that the country has made progress in improving its economic conditions.

13

reopening bears on the adequacy of healthcare in the country of removal. If that is what the BIA meant, it has misapprehended the breadth of its own authority.

Under 8 C.F.R. § 1208.13(b)(1)(iii) the BIA can grant relief to an applicant who has suffered past persecution but does not face a reasonable possibility of future persecution. *Sheriff v. Att'y Gen.*, 587 F.3d 584, 595 (3d Cir. 2009).[11] That particular avenue of relief is typically called humanitarian asylum and it is available upon a showing of at least one of two types of circumstances: either that "[t]he applicant has demonstrated compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution[,]" 8 C.F.R. § 1208.13(b)(1)(iii)(A),[12] or that the applicant "has established that there is a reasonable possibility that he or she may suffer other serious harm upon removal to that

---

[11] The regulation at issue in *Sheriff* was actually 8 C.F.R. § 208.13(b)(1)(iii)(B) but reads identically to 8 C.F.R. § 1208.13(b)(1)(iii)(B). The latter is a duplication of the former as a result of the Homeland Security Act of 2002, as amended, which transferred the functions of the INS to the Department of Homeland Security. 68 F.R. 9824-01. Those two "provisions relate to both the INS and [the Executive Office for Immigration Review] and are so interrelated that no simple division of jurisdiction is possible" and thus duplication was required. *Id.*

[12] That category of asylum – one based on past persecution alone – is sometimes referred to as "Matter of Chen" asylum due to its treatment in the case *In re Matter of Chen,* 20 I. & N. Dec. 16, 18 (BIA 1989).

14

country[,]" 8 C.F.R. § 1208.13(b)(1)(iii)(B). Only the latter type of humanitarian asylum, that based on "other serious harm," is at issue here.

We have determined that "other serious harm" means "harm that may not be inflicted on account of race, religion, nationality, membership in a particular social group, or political group, but harm so serious as to equal the severity of persecution." *Sheriff*, 587 F.3d at 596 (internal quotation marks omitted). We have noted the Department of Justice's position that economic disadvantage and the inability to practice one's chosen profession are examples of harms that do not qualify as "other serious harm" in the context of humanitarian asylum. *Id.*

"While those two examples may not pass muster" as "other serious harm," we have considered possible situations that would. *Id.* For example, we have cited a decision by the United States Court of Appeals for the Seventh Circuit concluding that debilitation and homelessness "appear[ed] to constitute serious harms for the purposes of" 8 C.F.R. § 1208.13(b)(1)(iii)(B). *Id.* (quoting *Kholyavskiy v. Mukasey*, 540 F.3d 555, 577 (7th Cir. 2008)). In that case, the underlying facts were that the petitioner, if returned to Russia, would be without the only medications that controlled his mental illness and would thus be incapable of functioning on his own and unable to obtain housing and medical treatment. *Kholyavskiy,* 540 F.3d at 577. Because it appeared that the petitioner's situation might be one that would qualify as "serious harm," the Seventh Circuit remanded to the BIA for further consideration on that issue because neither the IJ nor the BIA had explored the availability of the "other serious harm" variety of humanitarian asylum. *Id.*

15

Just as debilitation and homelessness resulting from the unavailability of specific medications arguably fall within the ambit of "other serious harm," *id.*, it is conceivable that, in extreme circumstances, harm resulting from the unavailability of necessary medical care could constitute "other serious harm" under 8 C.F.R. § 1208.13(b)(1)(iii)(B). We hasten to add and to emphasize that we are not suggesting that differing standards of healthcare around the world are, in themselves, a basis for asylum. We are only holding that the issue of health care is not off the table in the asylum context, as the BIA seemed to say when it remarked that "[Pllumi's] concerns about his future healthcare on his return to Albania are not relevant." (App. at 4) On the contrary, it is within the BIA's authority to consider health concerns and associated "harms" resulting from deportation when it exercises its discretion in deciding whether to grant humanitarian asylum. To the extent, then, that the BIA considered Pllumi's health issues irrelevant to its decision on *sua sponte* reopening because it thought those issues could not be considered, it erred.[13]

---

[13] Our conclusion here does not affect in any way our rejection of the proposition that a lack of healthcare in a petitioner's home country can serve as a basis for relief under the CAT. As we explained in *Pierre v. Attorney General,* 528 F.3d 180 (3d Cir. 2008) (en banc), that is because, under the governing regulations, an act only constitutes torture if it is

> intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or

Given the possibility that the BIA mistakenly thought it did not have the authority to consider Pllumi's health concerns as "other serious harm" under 8 C.F.R. § 1208.13(b)(1)(iii)(B), we will follow *Mahmood* and remand to the BIA for clarification of the basis for its decision declining to exercise its discretion to reopen Pllumi's case. If the BIA "misperceived the legal background" for its exercise of discretion, *Mahmood,* 570 F.3d at 469, it should now take its full authority into account. We note that, though it is within the BIA's jurisdiction to consider Pllumi's health concerns, the BIA is not required to find that those concerns qualify as "other serious harm" under 8 C.F.R. § 1208.13(b)(1)(iii)(B), and nothing we have said here should be taken as implying otherwise. If on remand the BIA declines to exercise its *sua sponte* authority but does so in a manner that does not indicate a misunderstanding of its authority, then that decision will be unreviewable.

---

her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

(quoting 8 C.F.R. § 208.18(a)(1)). In short, the CAT "requires a showing of specific intent before the court can make a finding that a petitioner will be tortured." *Id.* The pain and hardship that an alien subject to removal may suffer because of inadequate healthcare in the country of removal are "unintended consequence[s] [that are] not the type of proscribed purpose[s] contemplated by CAT." *Id.*

## IV.    Conclusion

For the forgoing reasons we will grant Pllumi's petition for review, vacate the BIA's order, and remand to the BIA for further consideration consistent with this opinion.