NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4240
_____

KWAN HO WU,
a/k/a Shui-Hui Wei,
a/k/a Kuan He Wu,
a/k/a Ho Kwan Wu,
                    Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent
_____

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS
(Agency No. A071-873-513)
Immigration Judge: Hon. William Strasser
_____

Submitted Under Third Circuit LAR 34.1(a)
June 5, 2015
_____

Before: FISHER, JORDAN, and SHWARTZ, <u>Circuit Judges</u>.

(Filed: June 8, 2015)
_____

OPINION*

_____

    * This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

1

_____

SHWARTZ, Circuit Judge.

Kwan Ho Wu ("Wu"), a native and citizen of China from the Zhejiang province, petitions for review of a decision of the Board of Immigration Appeals ("BIA") denying his supplemental motion to reopen his removal proceedings. Because the BIA acted within its discretion in denying Wu's motion, we will deny his petition.

I

In 1992, Wu was detained and charged with inadmissibility under 8 U.S.C. § 1182(a)(6)(C) for attempting to fraudulently obtain admission into the United States and 8 U.S.C. § 1182(a)(7)(A)(i)(I) for attempting to enter the United States without a properly issued visa. Wu filed an application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), claiming that he would be persecuted for his past activities as a student demonstrator and involvement in a "pro-democracy movement." AR 1896. In 1994, the IJ denied Wu's application and ordered Wu's removal from the United States, finding that there was not "sufficient, credible evidence . . . that [Wu] was persecuted before he left China or that it is likely that he has a well-founded fear of persecution . . . if he were to return to China." AR 1735. In 2000, the BIA affirmed the IJ's decision and dismissed Wu's appeal, finding that Wu "has not established that he was persecuted in China" or that "he has a well-founded fear of persecution." AR 1721–22.

2

In 2007, Wu filed a motion to reopen, claiming that his attorney failed to inform him that the BIA dismissed his appeal and failed to appeal the BIA's decision. The BIA denied Wu's motion because he failed to make the required showing "that he acted with reasonable diligence" in maintaining contact with his former counsel following his appeal of the IJ's 1994 decision. AR 1695.

In 2010, Wu filed his second motion to reopen on the basis of changed country conditions in China. Wu, who at that time had four U.S.-born children, specifically cited China's family planning policies, which limit the number of children a person may have and penalize those who exceed the limit through fines, forced abortions, and forced sterilizations. Wu presented "voluminous" documents including affidavits from other Chinese nationals "who have allegedly experienced sterilizations," a 2009 article from the Law Library of Congress, an excerpt of the "2009 Congressional-Executive Commission on China [CECC] Annual Report" (the "2009 CECC Report"), and "various other reports from 2007 through 2009." AR 4.[1] The BIA denied Wu's second motion to reopen as untimely and because Wu failed to present authenticated evidence that demonstrated changed country conditions. Specifically, the BIA noted that the birth of Wu's four children constituted a change in personal circumstances, not "a change in

---

[1] "The CECC is a body created by Congress with the legislative mandate to monitor human rights and the development of the rule of law in China. It is composed of nine Senators, nine Members of the House of Representatives, and five senior Administration officials appointed by the President. The CECC reports are pertinent official publications of the federal government." Zhu v. Att'y Gen., 744 F.3d 268, 277 n.15 (3d Cir. 2014) (internal quotation marks and citation omitted).

circumstances or country conditions 'arising in the country of nationality' so as to create an exception to the time limitation for filing a motion to reopen." AR 1338 (quoting 8 U.S.C. § 1229a(c)(7)(C)(ii)). The BIA also noted Wu's failure to "demonstrate how conditions in China have changed since his last motion [to reopen] in 2007," when Wu and his spouse already "had multiple children." AR 1338.

One month later, Wu filed his third motion to reopen, again claiming changed country conditions in China based on its family planning policies. As with his second motion to reopen, Wu offered numerous documents, including "a 2001 administrative decision of the Qi Du Township Education Department," a research article from 2007, "several media reports dated between 2007 and 2009," various 2008 announcements from neighborhood and township committees in China, a portion of the 2009 CECC Report, and additional congressional and academic research reports. AR 4. The BIA denied Wu's third motion to reopen, finding that "[m]ost of the evidence is not new nor previously unavailable" and that Wu "has not demonstrated that he would be subjected to economic harm amounting to persecution" were he to return to China. AR 974–75. In 2012, we vacated the BIA's denials of Wu's second and third motions to reopen and remanded to the BIA to determine whether country conditions in China had changed since Wu's 1994 hearing before the IJ, rather than whether they had changed since the date of Wu's first motion to reopen as the BIA had done. Wu v. Att'y Gen., 461 F. App'x 184 (3d Cir. 2012) (not precedential).

4

After remand, Wu filed "Supplementary Materials," AR 889, and "Supplementary Submissions," AR 842, containing additional documents, including letters purportedly from "the Village Committee of QianSha Village" and "the Family Planning Office of Wenzhou City," AR 845, 847, two 2010 U.S. State Department communications "regarding [United Nations Population Fund] funding and China's population control" and "regarding population control [policies] in Fujian province," two 2011 articles "regarding birth control policies in China," and Wu's 2011 letter to "the U.S. State Department Appeals Review Panel." AR 5. The BIA considered Wu's prior evidence along with these new documents and, in a decision dated February 28, 2013, denied Wu's second and third motions to reopen.

Wu moved for reconsideration of the BIA's February 28, 2013 decision. In support of his motion, Wu submitted "complete versions of previously filed partial U.S. State Department and Congressional reports, and a statement from [Wu's] attorney regarding his attempts to authenticate his previously proffered documentation." AR 5. The BIA denied Wu's motion for reconsideration, determining that he "fail[ed] to indicate any error in law or fact" in its February 28, 2013 decision. AR 160. Wu appealed, and we granted the Government's unopposed motion to remand to the BIA for further consideration of certain documents Wu had submitted in his prior motions but that "were not specifically addressed in the BIA's decision," namely "documents from the Chinese government's website that [Wu] claimed were self-authenticating" and "documents from [his] home province of Zhejiang." AR 155.

5

On remand, Wu also filed his fourth "supplementary" motion to reopen (the "Supplemental Motion"), AR 14, which included an affidavit of Myron Cohen, an anthropology professor at Columbia University who Wu asserts "has focused his academic research on the study of Chinese culture and family," AR 15, documents from Chinese government websites concerning family planning policies in Wu's home province of Zhejiang, and several Internet news articles concerning forced abortions in Zhejiang.

The BIA denied Wu's Supplemental Motion (the "Final Decision"). The Final Decision first addressed the documents from the Chinese government websites and found they did not "demonstrate a change in country conditions in Zhejiang Province since 1994" concerning China's family planning policies or its enforcement of those policies. AR 6. The BIA also re-reviewed various documents from the Chinese government website that Wu had provided with his second motion to reopen and found that they "do not announce or describe a significant or non-incremental change in the family planning laws or enforcement of such laws." AR 8. The BIA also reviewed "a third set of documents from Zhejiang province" that Wu provided following remand and similarly found that they did not indicate "that sterilization would be forcibly imposed or that harm amounting to persecution would be otherwise inflicted on the father of U.S. born children who returns to China." AR 9. The BIA concluded that these documents, taken together, "[a]t most . . . demonstrate that pressures to enforce the family planning policy vary from locale to locale and fluctuate incrementally from time to time." AR 9.

6

The Final Decision then addressed photocopies of unsigned letters Wu claimed were prepared by the Village Committee of QianSha Village and the Family Planning Office of Wenzhou City.[2] The BIA found "no basis to conclude that these letters are authentic," AR 9, and, even assuming their authenticity, determined that they did "not indicate a shift or change in policy demonstrating a change in family planning enforcement" given that "[s]imilar letters have been provided for many years," AR 10.

The Final Decision next considered Professor Cohen's affidavit, in which he opined that "officials in Zhejiang offer cash rewards to informants who report on family planning violations," which he suggested showed "a high probability" that Wu would be subject to forced sterilization. AR 10. Professor Cohen also represented that "present day enforcement [of China's family planning policies] has become significantly harsher than in 1994." AR 10–11. The BIA gave "minimal weight" to Professor Cohen's opinions because they were "based primarily on materials provided by [Wu's] attorney"

---

[2] The first letter, purportedly from the "Village Committee of QianSha Village, QiDu Street, LuCheng District, Wenzhou City" to "Villagers YouXiong WU" and "VengYing HUANG," describes QianSha Village's policy that "a couple who have reached their marriageable age can only give birth to one child" and that "after birth of one child, one must have IUD [sic] inserted, and those who gave birth to two children must be sterilized," and advises the letter's recipients that YouXiong WU's son (who we assume ostensibly violated these policies by having children while living in the United States) "is subject to sterilization unless he becomes a United States citizen or a permanent resident." AR 847–48. The second letter, purportedly from the "Family Planning Office[,] QiDu Street, LuCheng District, Wenzhou City" to the same recipients, similarly explains that YouXiong WU's son "is still under the regulation of family planning office [sic] of QiDu Street if he returned back to China" and "violated the family planning policy by giving birth to four children" while in the United States. AR 852–53.

7

and because Cohen lacked "any personal or anecdotal knowledge of instances of forced sterilization" or increased enforcement of China's family planning policies. AR 11.

Concluding that Wu failed to carry his burden "of demonstrating changed country conditions that would justify reopening these proceedings" or establish "a prima facie case of eligibility for asylum,"[3] the BIA denied Wu's Supplemental Motion. Wu petitions for review of the BIA's Final Decision.

II

The BIA had jurisdiction to review Wu's motion to reopen under 8 C.F.R. § 1003.2. We have jurisdiction pursuant to 8 U.S.C. § 1252. We review the denial of a motion to reopen for abuse of discretion, "regardless of the underlying basis of the alien's request for relief." Pllumi v. Att'y Gen., 642 F.3d 155, 158 (3d Cir. 2011). We thus give "broad deference" to the BIA's ultimate decision, Ezeagwuna v. Ashcroft, 325 F.3d 396, 409 (3d Cir. 2003) (internal quotation marks omitted), which we will disturb only if it is "arbitrary, irrational, or contrary to law," Filja v. Gonzales, 447 F.3d 241, 251 (3d Cir. 2006) (internal quotation marks omitted).[4]

---

[3] The BIA also observed that Wu had not "provided convincing evidence that a father of multiple children born in the United States who returns to China would be forcibly sterilized" or "shown that [economic] sanctions [he may face] would approach the severity required to constitute persecution," given that Wu's application for cancellation of removal "indicates that he had $1,400,000.00 in assets and earned $6,000.00 a week." AR 12–13.

[4] "The BIA may deny a motion to reopen if it determines that (1) the alien has not established a prima facie case for the relief sought; (2) the alien has not introduced previously unavailable, material evidence; or (3) in the case of discretionary relief (such as asylum), the alien would not be entitled to relief even if the motion was granted."

8

III

Wu's Supplemental Motion to reopen was both time- and number-barred. See 8

U.S.C. § 1229a(c)(7)(A), (C)(i) (providing that an applicant generally may file only one

motion to reopen and must do so "within 90 days of the date of entry of a final

administrative order of removal"). Moreover, as explained herein, Wu has not met the

exception that permits an untimely motion as he has not presented previously unavailable

material evidence of "changed country conditions arising in the country of nationality."

Id. § 1229a(c)(7)(C)(ii); Shardar v. Att'y Gen., 503 F.3d 308, 313 (3d Cir. 2007).

To determine if the BIA abused its discretion in denying Wu's Supplemental

Motion, "we must determine if the BIA meaningfully considered the evidence and

arguments [Wu] presented." Zhu v. Att'y Gen., 744 F.3d 268, 272 (3d Cir. 2014).

Although the BIA need not "parse or refute on the record each individual . . . piece of

evidence offered by the petitioner," Zheng v. Att'y Gen., 549 F.3d 260, 268 (3d Cir.

2008) (internal quotation marks omitted), it "must provide an indication that it considered

such evidence, and if the evidence is rejected, an explanation as to why it was rejected,"

Zhu, 744 F.3d at 272.

---

Huang v. Att'y Gen., 620 F.3d 372, 389 (3d Cir. 2010) (internal quotation marks
omitted). Where the BIA concludes that a petitioner has not established a prima facie
case to reopen proceedings, we review the BIA's findings of fact under the substantial
evidence standard. Sevoian v. Ashcroft, 290 F.3d 166, 174 (3d Cir. 2002). Under this
standard, we must uphold the BIA's factual findings "unless the evidence not only
supports a contrary conclusion, but compels it." Abdille v. Ashcroft, 242 F.3d 477, 483–
84 (3d Cir. 2001).

Here, Wu contends primarily that: (i) the BIA failed to consider the entire record, including documents from Wu's prior motions to reopen such as the 2009 CECC Report; (ii) even if the Final Decision incorporated the BIA's consideration of these documents from its previous February 28, 2013 decision, neither decision adequately considers these documents; and (iii) the BIA improperly discounted the evidentiary weight of certain documents, namely letters from various Chinese government entities and the affidavit of Professor Cohen. Although we agree that the BIA could have more thoroughly discussed certain of Wu's submissions, the Final Decision reflects that the BIA meaningfully considered Wu's voluminous documentary evidence such that it acted within its discretion in denying his Supplemental Motion.

The Final Decision explains that the BIA considered the documents "filed with each [of Wu's] motion[s] and appeal," including the documents "identified in the government's motion to remand" and in Wu's previous motions to reopen to determine "whether the totality of the evidence submitted since the first motion to reopen establishes changed country conditions." AR 3. The Final Decision proceeds to discuss numerous documents Wu included in his various motions to reopen, and after "hav[ing] thoroughly reviewed" them, found them insufficient to establish "a change in country conditions since 1994" concerning the policies governing "Chinese citizens with children born outside of the United States" such as Wu. AR 9–11.[5] See generally Liu v. Att'y

---

[5] Although we agree with Wu that the BIA's February 28, 2013 decision erroneously identifies Fujian Province as Wu's home province in one place, the Final

Gen., 555 F.3d 145, 151 (3d Cir. 2009) (clarifying that an applicant "citing changed personal circumstances" still must "demonstrate[] that there are changed country conditions").

For example, the Final Decision reflects the BIA's examination of the Chinese government documents Wu included with his first and second motions to reopen. It provides "an explanation as to why [these documents] w[ere] rejected," Zhu, 744 F.3d at 272, and contains "more than cursory, summary or conclusory statements" such that we can "discern [the BIA's] reasons for declining" Wu's requested relief, Zheng, 549 F.3d at 268 (internal quotation marks omitted).[6] As to documents purportedly from the Chinese government website, the BIA explained that they did not "directly address the treatment of Chinese nationals returning to China with [U.S.-born] children" or government enforcement of family planning policies in Zhejiang, Wu's home province. AR 6–**7**. Likewise, the BIA noted that the "Family Planning Regulations of Zhejiang Province" that Wu included with his first motion to reopen "did not directly address the treatment of Chinese nationals returning to China with children born in the United States" or otherwise "refer to forced abortion or forced sterilization for violations of the family planning policy." AR 7. Furthermore, the Final Decision shows that the BIA thoroughly

Decision explicitly examined whether Wu carried his "burden to demonstrate that the current situation for enforcement of family planning policy in Zhejiang province today has sufficiently changed since 1994 to justify reopening." AR 9.

[6] The Final Decision also lists the "additional" Chinese Government documents Wu included with his second motion concerning family planning policies in Zhejiang Province, and found them unpersuasive for describing family planning enforcement efforts "in place since the late 1980s." AR 8.

11

reviewed the "third set of documents from Zhejiang province" that Wu submitted

following remand, AR 8, assumed their authenticity, discussed one such document in

substantial detail, and found they did not reflect a "change in country conditions [in

Zhejiang province] since 1994." AR 9.

Thus, this is not a case in which the BIA "fail[ed] to discuss most of the

evidentiary record" or "did little more than quote passages from its earlier decision . . .

without identifying—let alone discussing—the various statements contained in the record

before it." Zheng, 549 F.3d at 268–69 (vacating denial of motion to reopen where the

BIA "did not mention" numerous documents included in the petitioner's motion).

Rather, the BIA here fulfilled its obligation under Zhu to consider relevant and authentic

evidence.

The BIA's failure to thoroughly discuss or credit the 2009 CECC Report does not

undermine this conclusion.[7] As we noted in Zhu, CECC reports "alone" are not

"necessarily sufficient to demonstrate a material change in country conditions." Zhu, 744

F.3d at 278 n.21. Even had the Final Decision specifically discussed Wu's excerpted

2009 CECC Report, the BIA could have reasonably discounted its probative value as it

predominantly describes activities in provinces other than Zhejiang and only discusses

---

[7] We remind the BIA that CECC reports may "materially bear" on certain claims for asylum premised on changed country conditions and, under those circumstances, may merit explicit consideration. Zhu, 744 F.3d at 278; see also Chen v. Holder, 742 F.3d 171, 180 (4th Cir. 2014) ("The BIA's failure to account for the reports of the CECC is not unprecedented."); Ni v. Holder, 715 F.3d 620, 627 (7th Cir. 2013) ("The Board's ongoing refusal to respond meaningfully to [CECC Reports] is difficult to understand.").

12

female-specific enforcement mechanisms.[8]  Coupled with the Final Decision's "reasoned

consideration" of the bulk of Wu's submissions and "adequate findings" about those

submissions, Zheng, 549 F.3d at 268 (internal quotation marks omitted), a reasonable

adjudicator would not be "compelled" to reach a contrary conclusion regarding the

country conditions based on the CECC Report, Kayembe v. Ashcroft, 334 F.3d 231, 237

(3d Cir. 2003).

Finally, the BIA acted within its discretion in finding Wu's letters from the Village

Committee of QianSha Village and the Family Planning Office of Wenzhou City

insufficiently authenticated.  The BIA "can reject evidence that it finds to be

untrustworthy or irrelevant."  Zhu, 744 F.3d at 273–74.  Here, the BIA found Wu's letters

inauthentic because Wu "submitted photocopies rather than original letters, the letters

lack signatures, and no author is identified in either letter."  AR 9.  Wu has provided no

basis to refute these conclusions.  Because the BIA "is not required to conduct an

independent examination of a document where the proponent has provided no basis from

which it could find the document is authentic," Zhu, 744 F.3d at 274, we reject Wu's

contention that the BIA improperly "discount[ed] material evidence from [his]

---

[8] See, e.g., AR 1571 ("[C]entral and local authorities continued to interfere with and control the reproductive lives of Chinese women . . . ."), id. at 1572 (reporting that "additional fines are imposed on women who resist official efforts to 'implement remedial measures' such as abortion"), id. at 1573 (finding that "'termination of pregnancy' is explicitly required in eight provinces," and listing "10 other provinces" wherein officials "are authorized to take 'remedial measures' to deal with 'out-of-plan' pregnancies," none of which are Zhejiang Province).

13

hometown" due to its lack of authenticity, Pet'r Br. 36.[9]  Thus, the BIA did not abuse its discretion in denying Wu's Supplemental Motion.[10]

IV

For the foregoing reasons, we will deny the petition.

---

[9] We also reject Wu's contention that the BIA erred by affording "minimal weight" to Professor Cohen's affidavit.  Pet'r Br. 43.  The Final Decision contains multiple paragraphs reflecting the BIA's consideration of Professor Cohen's opinions and explaining why it gave the opinion little weight.  The BIA discounted them in part because Professor Cohen did not indicate "that he has researched or written on issues of Chinese family planning law or policy prior to his involvement in his case."  AR 11. This reflects the BIA's view that he lacked a particular expertise in the relevant issues. This alone is a sufficient reason to afford the opinion little weight.  The BIA also discounted Professor Cohen's views because he offered no "personal knowledge to support his finding that there has been increased enforcement of the family planning policy . . . as to returnees from the United States with United States children."  AR 11. Even if we disagreed with the BIA's decision to discount his opinions based on a lack of personal knowledge, as previously stated, the BIA gave "reasoned consideration" to Cohen's opinion and, under our highly deferential standard of review, we defer to the weight the BIA gave to the opinion.  Zheng, 549 F.3d at 268 (internal quotation marks omitted).

[10] We likewise conclude that the BIA acted within its discretion in concluding that Wu failed to carry his burden of establishing a prima facie showing of eligibility for asylum.