**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4830
_____

FENG YING LI,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent
_____

Petition for Review of an Order of
the Board of Immigration Appeals
(Agency No. A077-234-282)
Immigration Judge: Hon. Paul Grussendorf
_____

Submitted Under Third Circuit LAR 34.1(a)
July 17, 2015
_____

Before: SMITH, GREENAWAY JR., and SHWARTZ, <u>Circuit Judges</u>.

(Filed: July 17, 2015)
_____

OPINION[*]
_____

SHWARTZ, <u>Circuit Judge</u>

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Feng Ying Li, a native and citizen of China, petitions for review of a decision of the Board of Immigration Appeals ("BIA") denying her fifth motion to reopen her removal proceedings. Because the BIA acted within its discretion, we will deny the petition.

I

Li entered the United States in 1998 without a valid entry document. She applied for asylum, withholding of removal, and relief under the Convention Against Torture, claiming that "the [Chinese] government was looking for [her] and wanted [her] to be fined and sterilized" following the birth of her first child. A.R. 3225-26. The Immigration Judge ("IJ") determined that she was not credible and denied her application in 1999. The BIA affirmed and ordered her removal. Li remained in the United States, had a second child, and filed four motions to reopen her removal proceedings based on China's population control policies, each of which the BIA denied. See Li v. Att'y Gen., 562 F. App'x 78, 79-80 (3d Cir. 2014) (not precedential) (describing procedural history).

In 2013, Li filed a fifth motion to reopen, this time on the basis of her political activities. In her motion, Li stated that she joined the Party for Freedom and Democracy in China ("PFDC") and that she participated in public protests in the United States against the Chinese government. She claimed that the Chinese government "discovered" her activities and that "some policemen came to her parents' home in China" and "demanded" that she "return to China to receive punishment." A.R. 50-51. In support of these claims, she submitted, among other things, her PFDC membership card,

2

photographs of her participating in PFDC activities, a letter from her mother describing the police encounter, and certain "[b]ackground materials," A.R. 60, including: a November 14, 2012 New York Times article describing leadership changes within the Chinese Communist Party; a January 7, 2013 New York Times article discussing protests in China over media censorship; a February 28, 2013 Epoch Times article describing the arrest of "[a]ctivists and petitioners" at Chinese New Year gatherings in Beijing and Shanghai, A.R. 141; and the United States Department of State ("State Department") 2007 Profile of Asylum Claims and Country Conditions in China.

The BIA denied the motion, concluding that the evidence Li submitted failed to establish that there had been a change in country conditions for political dissidents since 1999, when the IJ first ruled on Li's asylum application. Li filed a petition for review, which we granted. See Li, 562 F. App'x 78. While we agreed with the BIA that the evidence in the record "indicates that treatment of political activists in 2007 was substantially similar to how political activists were treated in 1999," we directed the BIA to consider on remand whether more recent State Department Country Reports ("Country Reports") "provide evidence that the treatment of political activists in China has worsened" since 2007. Id. at 81.

On remand, the BIA considered the Country Reports for 1999 and each of the years from 2008 through 2013, and found that while there appears to have been a gradual increase in the repression of political dissent since 1999, when the government instituted a "crackdown" against the China Democracy Party, "conditions for political dissidents

3

. . . are not significantly worse than the conditions discussed in the 1999 Country Report." A.R. 5. The BIA also found that the newspaper articles Li submitted failed to establish that there has been a significant worsening of conditions, and that her decision to join the PFDC was a changed personal circumstance that did not constitute evidence of changed country conditions. Accordingly, the BIA concluded that Li "has not met her burden of establishing that conditions in China for political dissidents have worsened significantly since 1999" and denied her motion. A.R. 6. Li petitions for review.

## II

The BIA had jurisdiction to review Li's motion to reopen under 8 C.F.R. § 1003.2. We have jurisdiction under 8 U.S.C. § 1252. We review the denial of a motion to reopen for abuse of discretion, "regardless of the underlying basis of the alien's request for relief." Pllumi v. Att'y Gen., 642 F.3d 155, 158 (3d Cir. 2011). We give "broad deference" to the BIA's ultimate decision, Ezeagwuna v. Ashcroft, 325 F.3d 396, 409 (3d Cir. 2003) (internal quotation marks omitted), which we will disturb only if it is "arbitrary, irrational, or contrary to law," Filja v. Gonzales, 447 F.3d 241, 251 (3d Cir. 2006) (internal quotation marks omitted). Where, as here, the BIA concludes that the petitioner has not established a prima facie case to reopen proceedings, we review the BIA's findings of fact under the substantial evidence standard. Sevoian v. Ashcroft, 290 F.3d 166, 174 (3d Cir. 2002). Under this standard, we must uphold the BIA's factual findings "unless the evidence not only supports a contrary conclusion, but compels it." Abdille v. Ashcroft, 242 F.3d 477, 483–84 (3d Cir. 2001).

4

III

Li's fifth motion to reopen is both time- and number-barred. See 8 C.F.R. § 1003.2(c)(2) (providing that a petitioner generally may file only one motion to reopen and must do so "no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened"). To overcome this procedural hurdle, she must "present[] material evidence of changed country conditions that could not have been presented during the hearing before the IJ." Shardar v. Att'y Gen., 503 F.3d 308, 313 (3d Cir. 2007); see also 8 C.F.R. § 1003.2(c)(3)(ii) (providing that the "time and numerical limitations . . . shall not apply" if a petitioner presents material evidence of changed country conditions that was not available during the initial hearing).

The BIA correctly concluded that Li failed to meet her burden of establishing changed country conditions. As the BIA noted, the 1999 Country Report documents a "crackdown" against members of the China Democracy Party during that year, and describes "intensified efforts to suppress" that pro-democracy group. Bureau of Democracy, Human Rights and Labor, U.S. Dep't of State, China, in 1999 Country Reports on Human Rights Practices (Feb. 23, 2000), available at http://www.state.gov/j/drl/rls/hrrpt/1999/284.htm. It also describes "a policy of near-zero tolerance of dissent," the arrest of "scores of activists around the country," and the sentencing of "leading dissidents . . . to lengthy prison terms." Id. While more recent Country Reports show that China continues to target and suppress pro-democracy

5

political groups and political activists, see, e.g., Bureau of Democracy, Human Rights and Labor, U.S. Dep't of State, China, in 2010 Country Reports on Human Rights Practices (Apr. 8, 2011), available at http://www.state.gov/j/drl/rls/hrrpt/2010/eap/154382.htm, there is nothing in the 2013 Country Report indicating "meaningfully changed country conditions" after her hearing with the IJ in 1999.  Pllumi, 642 F.3d at 161 (internal quotation marks and citation omitted).  Indeed, the 2013 Country Report suggests "that the conditions described have persisted," rather than worsened.  Id.; see Bureau of Democracy, Human Rights and Labor, U.S. Dep't of State, China, in 2013 Country Reports on Human Rights Practices (Feb. 27, 2014), available at http://www.state.gov/j/drl/rls/hrrpt/humanrightsreport/index.htm?year=2013&dlid=220186 (noting that, "[a]s in previous years," Chinese citizens "did not have the right to change their government").

The other evidence Li submitted also does not indicate that country conditions have changed.  For example, the 2012 New York Times article describing leadership changes within the Chinese Communist Party indicates that the transition was "orderly," A.R. 130, and does not suggest that the changes have increased suppression of political activists.  The 2013 New York Times article Li submitted, which relates to media censorship, and the Epoch Times article, which fails to identify whether the alleged "[a]ctivists and petitioners" arrested were politically involved, do not show that country conditions have worsened.  See A.R. 141.  Accordingly, "[t]he BIA did not abuse its

6

discretion in deciding that [Li's] evidence of changed country conditions failed to support reopening [her] proceedings." Pllumi, 642 F.3d at 161.

Moreover, as we previously noted, Li's "decision to join the PFDC constitutes a change in personal circumstances rather than country conditions, [and her] 'choice to engage in such political activities after being ordered deported does not support application of the changed country conditions exception.'" Li, 562 F. App'x at 81 n.3 (quoting Khan v. Att'y Gen., 691 F.3d 488, 497 (3d Cir. 2012)); see also Ming Chen v. Holder, 722 F.3d 63, 66 (1st Cir. 2013) (holding that evidence that a petitioner joined the China Democracy Party while in the United States after he was ordered removed and thereafter "bec[a]me a target of the [Chinese] government" indicated a change in his personal circumstances and did not show changed conditions in China).

In sum, there is substantial evidence supporting the BIA's conclusion that China's treatment of political activity has remained consistent since 1999, and thus the BIA did not abuse its discretion in denying her fifth motion to reopen.[1]

IV

For the foregoing reasons, we will deny Li's petition for review.

---

[1] We also conclude that the BIA did not abuse its discretion in concluding that Li failed to carry her burden of establishing a prima facie showing of eligibility for asylum.