NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1356
_____

RONALD MEJIA BRAVO,
                                                    Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of a
Decision of the Board of Immigration Appeals
(Agency No. A094-380-974)

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 19, 2024
_____

Before:  HARDIMAN, MATEY, and PHIPPS, *Circuit Judges*.

(Filed: January 23, 2024)
_____

OPINION*
_____

PHIPPS, *Circuit Judge*.

    An illegal immigrant who was ordered removed in 2013 sought to have the Board

of Immigration Appeals *sua sponte* reopen his immigration proceedings in 2018 and 2021,

both times to seek cancellation of removal.  The BIA denied those motions in a single

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

order, which the alien now challenges.  For the reasons below, we will dismiss his petition for lack of jurisdiction.

## STATUTORY AND REGULATORY BACKGROUND

A formal removal proceeding begins with the filing of a Notice to Appear, commonly abbreviated as an 'NTA,' with the Immigration Court.  *See* 8 U.S.C. § 1229(a)(1) (describing content requirements of an NTA to initiate formal removal proceedings); 8 C.F.R. § 1239.1(a) ("Every removal proceeding . . . to determine the deportability or inadmissibility of an alien is commenced by the filing of a notice to appear with the immigration court.").[1]  If, as a result of those formal proceedings, the Immigration Judge issues an order of removal, an alien has thirty days to file an administrative appeal with the BIA; otherwise, the Immigration Judge's order becomes final.  *See* 8 C.F.R. § 1003.38(b); *id.* § 1003.39.  A decision by the BIA relating to the Immigration Court's removal order is a final order that is subject to judicial review.  *See* 8 U.S.C. § 1252(a).

Another option for challenging a final order of removal is for any party to move to reopen proceedings with the BIA within ninety days of its final order.  *See id.* § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2).  To succeed, such a motion must be based on new facts that were not previously available, and it must "produce objective evidence showing a 'reasonable likelihood' that [the alien] can establish" entitlement to relief. *Sevoian v. Ashcroft*, 290 F.3d 166, 175 (3d Cir. 2002) (quoting *S-V-*, 22 I. & N. Dec. 1306, 1316 (B.I.A. 2000) (en banc)).  In the absence of an exception,[2] once that time lapses, only

---

[1] *Cf.* 8 U.S.C. § 1228 (providing for special expedited removal proceedings without an NTA for aliens convicted of committing aggravated felonies); 8 C.F.R. § 1238.1 (providing for expedited removal proceedings which do not require an NTA).

[2] *See, e.g.*, 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3) (allowing motions to reopen outside the ninety-day time limit if the motion relates to an asylum application and is based on changed country conditions proved by evidence that is material and was unavailable and could not have been discovered or presented at the previous proceeding).

the BIA – at its own initiative – can reopen the proceedings. *See* 8 C.F.R. § 1003.2(a) ("The decision to grant or deny a motion to reopen or reconsider is within the discretion of the [BIA]."). So even when an alien has no right to move to reopen, he or she may still move the BIA to *sua sponte* reopen proceedings. *See Pllumi v. Att'y Gen.*, 642 F.3d 155, 161 (3d Cir. 2011).

Because the BIA's decision to *sua sponte* reopen a removal proceeding subject to a final removal order rests in its discretion, judicial review of the BIA's decision is generally not available. *See id.* at 159 (holding that courts generally lack jurisdiction to review the BIA's decision not to reopen proceedings on *sua sponte* motions because such decisions "are committed to the unfettered discretion of the BIA"). This Circuit, however, has recognized two limited circumstances in which a court has jurisdiction to review such orders. First, when a party contends that the BIA's denial of a motion to reopen rests on an incorrect legal premise, that legal question is subject to judicial review. *See Sang Goo Park v. Att'y Gen.*, 846 F.3d 645, 651 (3d Cir. 2017) (citing *Pllumi*, 642 F.3d at 160). Second, when the BIA has "limited its discretion via a policy, rule, settled course of adjudication, or by some other method," judicial review is permitted to address a claim that the BIA deviated from that "settled course." *Id.* at 653.

During removal proceedings or even after a final removal order, an alien may seek cancellation of removal. While that relief is discretionary, *see Patel v. Garland*, 596 U.S. 328, 332 (2022), a nonpermanent resident's eligibility requires showings that he or she:

    i.    has been physically present in the United States for a continuous period of at least ten years immediately beforehand;

    ii.    has been a person of good moral character during that period;

    iii.    has not been convicted of statutorily identified offenses; and

iv.  if removed, would by virtue of being removed, cause "exceptional and extremely unusual hardship to [his or her] spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence."

*See* 8 U.S.C. § 1229b(b)(1).

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 2002, at age 19, Ronald Mejia Bravo, a citizen of Nicaragua, entered the United States without admission or parole. While living in the United States, he has fathered three children, who are each United States citizens.

Mejia Bravo was arrested in Asbury Park, New Jersey, for driving without a license, and through an NTA served on him on March 2, 2010, the Department of Homeland Security began removal proceedings against him on the grounds that he entered the country illegally. *See* 8 U.S.C. § 1182(a)(6)(A)(i). Under the 'stop-time' rule, service of an NTA ends an alien's continuous presence for purposes of cancellation of removal. *See id.* § 1229b(d)(1)(A). The NTA served on Mejia Bravo, however, did not specify the date or time of his removal proceedings – that information was communicated to him later.

At a master calendar hearing, Mejia Bravo conceded removability but sought two forms of relief from removal: statutory withholding and protection under the Convention Against Torture. Following an individualized hearing, the Immigration Judge denied his applications, and after Mejia Bravo administratively appealed, the BIA issued a final order of removal on May 28, 2013. Mejia Bravo sought judicial review, and this Court denied his petition. *See Bravo v. Att'y Gen.*, 590 F. App'x 145 (3d Cir. 2014).

After that ruling, the Supreme Court interpreted the stop-time rule in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). It held that an NTA that does not identify the date, time, and place of the noncitizen's removal proceedings does not trigger the stop-time rule. *Id.* at 2113–14.

4

Based on *Pereira*, Mejia Bravo filed two motions with the BIA to reopen his proceedings *sua sponte* – one in 2018, the other in 2021. Both motions sought reopening so that Mejia Bravo could seek cancellation of removal on the theory that under *Pereira*, his NTA, which lacked a date and time to appear, did not trigger the stop-time rule so that he met the requirement for ten-years continuous presence in the United States.

The BIA addressed both motions in a single decision.[3] There, it concluded that, even if Mejia Bravo met the ten-years continuous presence requirement, he did not meet another prerequisite for cancellation of removal: the showing of an exceptional and extremely unusual hardship for his family members. And because Mejia Bravo did not establish that his U.S. citizen family members, specifically his three children, would experience such hardship due to his removal, the BIA denied both motions.

In his current petition, Mejia Bravo challenges that decision.

## DISCUSSION

A court is generally without jurisdiction to review the BIA's denial of a motion to *sua sponte* reopen removal proceedings, *see Pllumi*, 642 F.3d at 159, and Mejia Bravo does not demonstrate that either exception applies here. The first exception is unavailable because the BIA's decision did not rest on an incorrect legal premise. The BIA correctly identified the legal standards on which it based its decision: (i) the movant's obligation to produce evidence establishing a reasonable probability of entitlement to relief, *see Sevoian*, 290 F.3d at 174–75, and (ii) the prerequisite for cancellation of removal that the movant's removal would result in exceptional and extremely unusual hardships for the movant's citizen family members, *see* 8 U.S.C. § 1229b(b)(1)(D). Mejia Bravo does not raise the

---

[3] The BIA initially rejected Mejia Bravo's 2018 motion, but after a subsequent Supreme Court decision on the impact of *Pereira*, on the joint motion of the parties, this Court remanded Mejia Bravo's petition challenging the decision to the BIA. *See Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021).

second exception – that the BIA deviated from its settled course. Nor would that exception apply because there is no evidence that the BIA routinely reopens proceedings when a petitioner has made a *prima facie* case for cancellation of removal. Because he does not show that one of the exceptions applies, Mejia Bravo has not established that this Court has jurisdiction over his petition. *See Sang Goo Park*, 846 F.3d at 653 (explaining that "a petitioner must establish" either of the two exceptions to show that this Court has jurisdiction to review the BIA's denial of a *sua sponte* motion to reopen).

**\* \* \***

For these reasons, we will dismiss this petition for lack of jurisdiction.