PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1289
_____

SHAHER ALZAARIR,
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                              Respondent
_____

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(Agency No. A95-820-824)
Immigration Judge:  Honorable Annie S. Garcy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 9, 2011

Before: RENDELL, JORDAN and
VAN ANTWERPEN, Circuit Judges

(Opinion filed: February 25, 2011)

Manuel F. Rios, Esq.
Rios & Cruz
811 First Avenue
Suite 200
Seattle, WA 98104
                    Counsel for Petitioner

(Shelley Goad, Esq.
(Julia J. Tyler, Esq.
United States Department of Justice
Office of Immigration
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
                    Counsel for Respondent

_____

OPINION OF THE COURT
_____

PER CURIAM

Shaher Alzaarir, a Palestinian citizen who was born in the West Bank when it was under Jordanian control,[1] entered the United States in 2001 as a visitor. In October 2002, the

---

[1]Although the Notice to Appear charged Alzaarir as a native and citizen of Jordan, and the Immigration Judge ("IJ") referred to him as possibly stateless, Alzaarir testified that he is a Palestinian citizen, and both parties describe him this way in their briefs.

Government charged Alzaarir with removability for overstaying his visa. Alzaarir conceded the charge, and through his attorney, Yasser Helal, he sought asylum, withholding, and protection under the Convention Against Torture. In September 2003, the IJ denied his applications and ordered Alzaarir removed to Jordan. Alzaarir, still represented by Helal, appealed to the Board of Immigration Appeals ("BIA"). On December 27, 2004, the BIA affirmed without opinion the IJ's decision. The BIA granted Alzaarir 30 days in which to depart voluntarily.

Meanwhile, in May 2004, Alzaarir married a United States citizen and moved to Seattle from Pennsylvania. On advice from Helal and an attorney in Seattle, he filed Forms I-130 (Visa Petition), I-485 (Application to Adjust Status), and I-765 (Application for Employment Authorization). He also faxed copies of the I-130 and I-485 forms to Helal so that he could "close out the asylum case." In January 2005, Alzaarir received his work permit; around the same time, he received notice to appear for an interview about his marriage. In February 2005, when Helal advised him that he risked arrest if he went to the interview, Alzaarir called the BIA's automated number and learned of the BIA's December 2004 decision. Alzaarir and his wife went to the interview on March 31, 2005, where the visa petition was approved.

On March 25, 2005, Helal submitted a motion to reopen to the BIA on Alzaarir's behalf. On May 17, 2005, the BIA denied the motion for the failure to make a *prima facie* showing of eligibility for relief. The BIA noted that Alzaarir did not submit an I-485. The BIA also held that Alzaarir was barred from adjusting his status because he did not voluntarily depart before the deadline to do so, January

3

26, 2005 (and he did not file his motion to reopen before then, either). In a footnote, the BIA noted that although Helal submitted the motion, he did not enter an appearance, so the BIA treated Alzaarir as proceeding *pro se*. The BIA mailed the decision to an address in Brooklyn where Alzaarir lived before moving to Pennsylvania, R. 80, although the BIA had previously mailed a notice in the reopening proceedings to Alzaarir's former Pennsylvania address, R. 109. (Alzaarir states that he sent a letter to the BIA informing him of his new Seattle address, but he does not describe the official change of address form and none appears in the record from that time period).

In June 2005, Alzaarir received a letter ordering him to report for removal. He then hired a new attorney, Eric Lin, to reopen his asylum case. In his brief, Alzaarir states that Lin worked to reopen his case "proceeding on representations from the DHS [Department of Homeland Security] attorneys that DHS would agree to reopening as long as the background checks were clear." Petitioner's Brief 10. However, in the agency, Alzaarir described Lin's work as tenacious but ultimately unsuccessful attempts over three years to get an agreement to joint reopening. R. 30. Alzaarir also argued before the agency that "evidence shows that the DHS trial attorneys in New York agreed to the motion to reopen, contingent on background checks being favorable." Id. However, the evidence provided was a December 26, 2007 e-mail from Lin with the subject "joint motion status?" and a message that Lin had not heard from DHS attorney David Cheng "regarding this matter" and asking him to let him know the reason for the delay. R. 97. Lin also stated in his e-mail that Cheng's "last word on this was that you would agree to reopen some background checks." Id. Cheng wrote back

4

on December 7, 2007, apologizing for not getting back to Lin sooner, and stating that "things with the background check are just taking a little longer than expected." Id. He also told Lin, "I will stay on top of it and advise you as soon as we have some sort of resolution." Id.

In May 2007, Immigration and Customs Enforcement officers arrested Alzaarir. He was detained until he was released under an order of supervision in August 2007. Thereafter (in his brief, Alzaarir gives the date as August 2008, but he did not provide a date to the agency), Alzaarir hired his present counsel to pursue the joint motion to reopen. Counsel tried to get DHS to agree to a joint motion to reopen until March 2009, when DHS stated that it would not join in the motion.

On August 10, 2009, Alzaarir, through his current counsel, filed his second motion to reopen, alleging ineffective assistance of Helal. Alzaarir alleged that Helal (1) filed a deficient appeal brief with the BIA; (2) failed to file a motion to remand based on Alzaarir's marriage; (3) failed to file a motion to reopen before the end of the voluntary departure period; (4) failed to notify Alzaarir that his agency appeal had been dismissed; and (5) filed a deficient motion to reopen with the BIA. Alzaarir also stated that he substantially complied with the requirements of Matter of Lozada, 19 I. & N. Dec. 637 (BIA 1988). He sought equitable tolling of the time and number limitations on motions to reopen. He also argued that the BIA should exercise its authority to reopen the proceedings *sua sponte*.

The BIA denied Alzaarir's motion as time- and number-barred. The BIA held that Alzaarir failed to show

5

that he had acted with the reasonable diligence necessary for an award of equitable tolling. The BIA highlighted the fact that, in June 2005, Alzaarir learned that he had been ordered removed, became "skeptical" of Helal's advice, and hired Lin. The BIA noted that no claim of ineffective assistance was made against Lin, who tried without success for three years to persuade DHS to file a joint motion to reopen. The BIA also observed that Alzaarir did not reveal when he consulted with his current counsel. However, the BIA noted, DHS notified counsel in March 2009 that it would not join in a joint motion, but the motion to reopen was not filed until August 10, 2009. The BIA also declined to reopen the proceedings *sua sponte*.

Alzaarir submits a petition for review of the BIA's decision. We have jurisdiction pursuant to 8 U.S.C. § 1252(a). Review of the BIA's decision to deny a motion to reopen is under a highly deferential abuse of discretion standard.[2] See Guo v. Ashcroft, 386 F. 3d 556, 562 (3d Cir. 2004). The discretionary decision is not disturbed unless it is found to be arbitrary, irrational, or contrary to law. See id.

We will deny the petition for review because we

---

[2]We do not consider the BIA's decision not to reopen the proceedings *sua sponte*. First, it does not appear that Alzaarir challenges that decision. Second, in any event, that decision is a discretionary decision beyond our jurisdiction. See Calle-Vujiles v. Ashcroft, 320 F.3d 472, 475 (3d Cir. 2003) ("Because the BIA retains unfettered discretion to decline to sua sponte reopen or reconsider a deportation proceeding, this court is without jurisdiction to review a decision declining to exercise such discretion to reopen or reconsider the case.")

6

cannot say the BIA's decision was arbitrary, irrational, or contrary to law. An alien faces number and time limitations on filing motions to reopen. Generally, an alien may file only one motion to reopen. See 8 U.S.C. § 1229a(c)(7)(A) (listing an exception not relevant here). Also, most motions to reopen must be filed no later than 90 days after the date of the final administrative decision. See 8 U.S.C. § 1229a(c)(7)(A); 8 C.F.R. § 1003.2(c)(2). Alzaarir presented his second motion to reopen to the BIA more than four and a half years after the BIA affirmed the IJ's order in his case.

The time limit for filing a motion to reopen is subject to equitable tolling, and perhaps the numerical limit is as well. See Borges v. Gonzales, 402 F.3d 398, 406 (3d Cir. 2005); Luntungan v. Attorney Gen. of the United States, 449 F.3d 551, 557 & n.15 (3d Cir. 2006). Ineffective assistance of counsel can serve as a basis for equitable tolling if substantiated and accompanied by a showing of due diligence. See Mahmood v. Gonzales, 427 F.2d 248, 252 (3d Cir. 2005). Due diligence must be exercised over the entire period for which tolling is desired. See Rashid v. Mukasey, 533 F.3d 127, 132 (2d Cir. 2008). "This includes both the period of time before the ineffective assistance of counsel was or should have been discovered and the period from that point until the motion to reopen is filed." Id.

Alzaarir requested tolling because of Helal's alleged ineffectiveness, which he discovered in June 2005, years before he filed his second motion to reopen. At that point, when he realized he had been ordered removed, he did hire another attorney, Lin. However, Lin, against whom Alzaarir has not made any allegations of ineffective assistance of counsel, did not file a motion to reopen. Lin may have tried

7

to persuade DHS to agree to a joint motion to reopen to avoid the time and number limitations on motions to reopen, see 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(3)(iii). However, an alien who delays filing a motion to reopen, while awaiting DHS's response to his counsel's request to file a joint motion to reopen, until the deadline is past generally is not entitled to equitable tolling. See Valeriano v. Gonzales, 474 F.3d 669, 670 (9th Cir. 2007).

Alzaarir argues in his brief that he was not merely waiting for a response to his request like the alien in Valeriano. He argues that he was exercising diligence because he was relying on representations from DHS that it would join in a motion to reopen if his background checks did not reveal anything negative. He states that evidence in the record supports his claim. Courts have allowed equitable tolling of the time period for filing a motion to reopen where the Government has misled a petitioner about what course of action to follow. See, e.g., Socop-Gonzalez v. INS, 272 F.3d 1176 (9th Cir. 2001) (*en banc*). The Court of Appeals for the Ninth Circuit also has intimated that tolling "might be justified" where counsel for the Government tells an alien's counsel who was contemplating filing a motion to reopen, "'don't do anything yet, we may agree [to a joint motion], hold off.'" Valeriano, 474 F.3d at 674 (citing Socop-Gonzalez). Accordingly, if the Government really made representations that it was going to agree to a joint motion, tolling might be appropriate even though the representations could only be considered in evaluating the diligence of the petitioner in this case.[3]

---

[3]The Government asks us not to consider an argument for tolling based on reliance because it was not presented to the

8

However, despite the petitioner's claims, the BIA was not presented with proof of a conditional promise of a joint motion or evidence of the situation for which the <u>Valeriano</u> court suggested tolling may be appropriate. As we described in more detail above, Alzaarir informed the BIA that Lin worked hard to get an agreement but was ultimately unsuccessful. In the agency, he also stated he had evidence of an agreement, but the evidence he presented – the e-mail exchange between Lin and Cheng from December 2007 – did not show that an agreement had been reached. Furthermore, the BIA considered that even when DHS informed Alzaarir's current counsel that DHS would not join a joint motion, it was not until several months later that Alzaarir filed his second motion to reopen.

Given the record in this case, the BIA did not abuse its discretion in concluding that Alzaarir did not exercise the diligence necessary to win equitable tolling and in consequently denying his motion to reopen. Accordingly, we will deny the petition for review.

agency. We consider the argument only in the context it was and is presented, namely, as support for diligence under the circumstances.