**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 14-4802

_____

JUVENAL VALDOVINOS-LOPEZ,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,

Respondent

_____

On Petition for Review of a Final Order
of the Board of Immigration Appeals
Immigration Judge:  Honorable Andrew Arthur
(No. A200-684-816)

_____

Submitted Under Third Circuit LAR 34.1(a)
July 9, 2015

Before: FUENTES, NYGAARD, and ROTH, <u>Circuit Judges</u>

(Opinion filed: October 16, 2015)

_____

OPINION*

_____

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

FUENTES, <u>Circuit Judge</u>

Juvenal Valdovinos-Lopez petitions this Court for review of a decision of the Board of Immigration Appeals denying his motion to reopen his removal proceedings. Because the Board's decision is premised on a mischaracterization of the applicable law, we grant the petition and remand for further proceedings.

I.

Valdovinos-Lopez is a citizen of Mexico. In 1994, when he was less than one year old, his parents brought him to the United States illegally. He lived here for quite some time but was eventually arrested for stealing a car and sent to juvenile detention. On April 5, 2011, when he was seventeen, Valdovinos-Lopez was transferred to the custody of Immigration and Customs Enforcement (ICE). Although he allegedly was eligible for bond, he was not advised of this or of his right to judicial review. And, because of his frequent transfers to different facilities, Valdovinos-Lopez had difficulty communicating with his family. A few weeks later (apparently after he turned eighteen), Valdovinos-Lopez was visited by ICE officers who presented him with a request for expedited deportation and explained that he could be released to Mexico very quickly if he signed the form. According to Valdovinos-Lopez, they did not explain that he could be eligible for bond or relief from removal; they did not ask him if he had any fear of returning to Mexico (which could provide the basis for a claim of asylum or withholding of removal); and they did not advise him that signing the form would waive his right to pursue immigration relief.

2

Valdovinos-Lopez signed the form. On April 28, 2011, he appeared before an Immigration Judge in Pennsylvania at a "quick docket" removal hearing along with sixteen other *pro se* respondents. The Immigration Judge addressed them as a group, explained that they had waived their right to counsel and immigration relief in exchange for quick deportation, and asked them a few questions before finding all of them removable as charged. Valdovinos-Lopez alleges that he was intimidated by the manner in which the Immigration Judge conducted the hearing and was afraid to speak out on his own behalf. He was removed to Mexico the next day. Although his parents had hired an attorney who filed a notice of appearance the day before the hearing, the attorney was unable to intercede before his removal.

Valdovinos-Lopez alleges that he had no family who could support him in Mexico and that he feared being kidnapped by criminal gangs. After one week, he reentered the United States, where he lived for a year until an arrest for possession of marijuana in the State of Washington. On January 17, 2014, he was again detained by ICE and placed in removal proceedings before an immigration judge in Washington. Seeking to reopen his prior proceedings, Valdovinos-Lopez's counsel requested a copy of the recording of his April 28, 2011 hearing (known as a DAR-CD) from the immigration court in Pennsylvania. In part because of technical problems at the court, counsel did not receive the DAR-CD until four months later, in September 2014. Because the immigration judge in Washington was not inclined to grant further continuances, counsel filed a motion to reopen in the Pennsylvania immigration court before having received the DAR-CD. The motion argued that ICE officers and the Immigration Judge (in Pennsylvania) violated

3

due process because Valdovinos-Lopez was not informed of his rights or his possible eligibility for relief and therefore did not knowingly and intelligently consent to removal.

An alien has the statutory right to file one motion to reopen removal proceedings within 90 days of the entry of an order of removal. *See* 8 U.S.C. § 1229a(c)(7)(C). After that time, the only basis for reopening is a regulation that gives the immigration courts the authority to reopen a removal proceeding *sua sponte*. *See* 8 C.F.R. § 1003.2(a). Motions to reopen *sua sponte* are subject to what is known as the "post-departure bar," which precludes a person already removed from the United States from filing such a motion. *See* 8 C.F.R. § 1003.2(d); *Desai v. Attorney Gen. of U.S.*, 695 F.3d 267, 268 (3d Cir. 2012). The post-departure bar does not, however, prohibit "statutory" motions to reopen (*i.e.*, those filed within the 90-day window). *See Desai*, 695 F.3d at 268, 270.

Because Valdovinos-Lopez's motion was filed years after the 90-day limit had expired and after his removal to Mexico, the Immigration Judge construed it as a motion to reopen *sua sponte* and denied it pursuant to the post-departure bar. Valdovinos-Lopez appealed to the Board of Immigration Appeals. By this time, counsel had obtained the DAR-CD, and therefore he requested that the Board construe the appeal as a separate motion to reopen based on newly discovered evidence. He contended that, in part due to delays in the transmission of the DAR-CD, the 90-day time limit should be equitably tolled. With equitable tolling, he argued, the motion was timely and therefore one he was statutorily entitled to file—rather than a motion to reopen *sua sponte*, which the post-departure bar would prohibit.

4

The Board dismissed the appeal, holding that his motion was *sua sponte* rather than statutory, and that the post-departure bar therefore applied. It explained that "after the 90-day deadline expired, and in the absence of a motion to reopen that implicates a statutory right, any motion to reopen is barred from consideration[,] . . . which includes the concept of equitable tolling." (App. 5.) It further noted that even if it could consider equitable tolling, the relevant starting point was the April 28, 2011 removal order, rather than counsel's request for the DAR-CD in 2014. Valdovinos-Lopez would have to show due diligence in pursuing his immigration case from that point onward.

Valdovinos-Lopez filed a petition for review with this Court.

## II.

We have jurisdiction under 8 U.S.C. § 1252(a)(1); the Board had jurisdiction under 8 C.F.R. § 1003.1(b)(3). Where, as here, the Board issues a reasoned opinion, we review that and look to the Immigration Judge's ruling only to the extent that the Board defers to it. *See Huang v. Attorney Gen. of U.S.*, 620 F.3d 372, 379 (3d Cir. 2010).

We generally review a denial of a motion to reopen removal proceedings for abuse of discretion. *See Pllumi v. Attorney Gen. of U.S.*, 642 F.3d 155, 158 (3d Cir. 2011). "The discretionary decision is not disturbed unless it is found to be arbitrary, irrational, or contrary to law." *Alzaarir v. Attorney Gen. of U.S.*, 639 F.3d 86, 89 (3d Cir. 2011).

Motions to reopen *sua sponte*, however, are different. "Because such motions are committed to the unfettered discretion of the [Board], we lack jurisdiction to review a decision on whether and how to exercise that discretion." *Pllumi*, 642 F.3d at 159. But where the Board has rejected a motion for *sua sponte* reopening, "we may exercise

5

jurisdiction to the limited extent of recognizing when the [Board] has relied on an incorrect legal premise. In such cases we can remand to the [Board] so it may exercise its authority against the correct legal background." *Desai*, 695 F.3d at 269 (citation and internal quotation marks omitted) (quoting *Pllumi*, 642 F.3d at 160).

Thus, regardless of the nature of the motion on appeal, remand is appropriate if the Board made an error of law.

III.

Valdovinos-Lopez argues that the Board erred in construing his appeal as a motion to reopen *sua sponte*, rather than a statutory motion to reopen. With equitable tolling, he argues, his motion was timely filed and avoids the post-departure bar. At the time of his "quick docket" removal hearing, Valdovinos-Lopez was eighteen, was not represented by counsel, was not aware of his possible eligibility for relief, had been detained away from his family despite his possible entitlement to bond, and did not understand the consequences of expedited removal. As a result, he argues that his delay in filing the motion to reopen is due to "his reasonable reliance on governmental and judicial error regarding his eligibility for relief." (Valdovinos-Lopez Br. 34.)

The Government first argues that Valdovinos-Lopez waived any argument that the post-departure bar does not apply by failing to raise the issue in his opening brief. That argument is, however, nearly the entirety of his opening brief. Next, the Government argues that the post-departure bar applies. In so doing, it assumes that Valdovinos-Lopez's motion is a motion to reopen *sua sponte* and does not address the possibility that equitable tolling could transform it into a statutory motion to reopen.

6

The Government's assumption is mistaken. If Valdovinos-Lopez is entitled to equitable tolling, and if equitable tolling would make his motion to reopen a timely one, then the motion would be statutory—not *sua sponte*. *See Alzaarir*, 639 F.3d at, 89-90 & n.2; *see also Bolieiro v. Holder*, 731 F.3d 32, 39-40 (1st Cir. 2013); *Singh v. Holder*, 658 F.3d 879, 884 & n.6 (9th Cir. 2011). As a result, the post-departure bar would not apply. *See Desai*, 695 F.3d at 268, 270.

Here, the Board mistakenly believed that equitable tolling was simply a factor to take into account when deciding whether to reopen *sua sponte*, rather than a factor that would extend the 90-day deadline for statutory motions. As a result, it applied the post-departure bar without making a definitive ruling on Valdovinos-Lopez's entitlement to equitable tolling. This was an error of law, and it is our responsibility to remand so that the Board may apply the correct legal principles. *See Desai*, 695 F.3d at 269; *Alzaarir*, 639 F.3d at 89.

We acknowledge that the Board observed that Valdovinos-Lopez had misstated the proper starting point for equitable tolling. In his brief to the Board, he argued primarily that the immigration court's delay in sending him the DAR-CD warranted equitable tolling. The Board responded that this was beside the point, since Valdovinos-Lopez also had to show that he had exercised due diligence in pursuing his immigration case from the time he was removed in April 2011.

It is true that "[d]ue diligence must be exercised over the entire period for which tolling is desired." *Alzaarir*, 639 F.3d at 90. But Valdovinos-Lopez's brief to the Board did not focus exclusively on the period that began when counsel requested the DAR-CD.

7

He also argued that he would have fought his removal had he been informed of his rights and his possible eligibility for relief at and before the removal hearing. These allegations that he was misinformed may be relevant to the due-diligence inquiry. *See id.* The Board did not consider this possibility, however, and the Government does not so much as mention it on appeal.

As both the Board and the Government have failed to meaningfully address Valdovinos-Lopez's equitable tolling argument, we believe that the appropriate course of action is to remand the issue for consideration by the Board in the first instance. *See Konan v. Attorney Gen. of U.S.*, 432 F.3d 497, 501-02 (3d Cir. 2005) (holding that "if the [Board] fails to address one of an applicant's stated grounds for relief, the case must be remanded for the [Board] to consider the claim"); *Mahmood v. Gonzales*, 427 F.3d 248, 252-53 (3d Cir. 2005) (noting that unless "the outcome is clear as a matter of law," the question of "[w]hether an alien has exercised due diligence generally should be determined by the [agency] in the first instance, and typically a remand [is] in order absent a finding of diligence (or lack thereof)").

IV.

For the foregoing reasons, we will grant the petition for review, vacate the Board's order, and remand to the Board for further consideration consistent with this opinion.