**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————————

No. 14-1713

————————————

YAN FANG CHEN,
                                        Petitioner

v.

ATTORNEY GENERAL OF UNITED STATES OF AMERICA,
                                        Respondent

————————————

On Petition for Review of a Final Order of the Board of Immigration Appeals
Immigration Judge: Honorable William Van Wyke
(No. A078-719-826)

————————————

Submitted Under Third Circuit L.A.R. 34.1(a)
October 8, 2015

Before:  FUENTES, SMITH, and BARRY, Circuit Judges

(Filed: December 16, 2015)

————————————

OPINION[*]

————————————

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FUENTES, Circuit Judge:

Yan Fang Chen petitions this Court for review of a decision of the Board of Immigration Appeals denying his motion to reopen his removal proceedings. Because the Board's decision failed to meaningfully consider much of the evidence Chen submitted in support of his motion, we will grant the petition and remand for a more thorough review and explanation as to whether Chen's evidence establishes a material change in country conditions sufficient to reopen his removal proceedings.

**I.**

Chen is a male native of Qingqiao Village, Heshang Town, Changle City, Fujian Province in the People's Republic of China. After illegally entering the United States in December 1999, Chen applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") based on his fear of persecution and torture due to his wife's alleged forced abortion of their second child in China.[1] In January 2002, an Immigration Judge denied Chen's applications for relief after finding Chen not credible. The Board dismissed Chen's appeal in November 2003.

In October 2013, Chen filed an untimely motion to reopen his removal proceedings, arguing that there was a material change in country conditions sufficient to

---

[1] At the time, Chen could establish eligibility for asylum or withholding of removal by virtue of his wife's forced abortion. *See In re C-Y-Z-*, 21 I. & N. Dec. 915, 918 (BIA 1997). Subsequently, this Court held that eligibility extends only to individuals who have themselves been subjected to an involuntarily abortion or sterilization procedure, have been persecuted for failure to undergo such a procedure, or have a well-founded fear of such persecution in the future. *Lin-Zheng v. Att'y Gen.*, 557 F.3d 147, 156-57 (3d Cir. 2009) (en banc).

2

exempt his untimely filing pursuant to 8 C.F.R. § 1003.2(C)(3)(ii). Chen claimed that new evidence demonstrated enhanced enforcement of China's one-child family planning policy, in particular the implementation of new family planning campaigns in Fujian Province designed to meet certain quotas for sterilizations and abortions. Chen argued that, due to the birth of his second child in the United States, he would be subjected to forced sterilization if removed to China, as the use of population targets and quotas render the one-child policy inherently coercive.

The Board disagreed. It found that Chen's evidence demonstrated that administrative punishments, such as social compensation fees, continue to be used to enforce the family planning policy, and Chen had not shown that he would be subjected to economic harm amounting to persecution. The Board noted that, while children born overseas to Chinese nationals indeed count towards the one-child policy, Chen's evidence was insufficient to support his claim that he would be subjected to sterilization in China. The Board also found that Chen had failed to demonstrate a *prima facie* case for CAT relief. The Board concluded that Chen's evidence did not establish a material change in country conditions sufficient to exempt his untimely filing and, accordingly, denied Chen's motion to reopen. This appeal followed.[2]

---

[2] The Board had jurisdiction to review Chen's motion to reopen under 8 C.F.R. § 1003.2. We have jurisdiction to review the Board's decision under 8 U.S.C. § 1252(a)(1). We generally review a denial of a motion to reopen removal proceedings for abuse of discretion. *Pllumi v. Att'y Gen.*, 642 F.3d 155, 158 (3d Cir. 2011). As such, the Board's ultimate decision "is not disturbed unless it is found to be arbitrary, irrational, or contrary to law." *Alzaarir v. Att'y Gen.*, 639 F.3d 86, 89 (3d Cir. 2011) (per curiam). We similarly review the Board's evidentiary rulings deferentially. *Zhu v. Att'y Gen.*, 744 F.3d 268, 272 (3d Cir. 2014).

## II.

A motion to reopen removal proceedings typically must be filed within ninety days of the final order of removal.[3]  This time limitation may be waived, however, if the motion is based on "changed circumstances arising in the country of nationality . . . if such evidence is material and was not available and could not have been discovered or presented at the previous hearing."[4]  Thus, to obtain relief on his untimely motion to reopen, Chen had to provide the Board with new, previously unavailable material evidence of changed conditions in China.

For purposes of our review, we must determine if the Board meaningfully considered the evidence and arguments Chen presented.[5]  "This does not mean that the BIA is required to expressly parse each point or discuss each piece of evidence presented, but 'it may not ignore evidence favorable to the alien.'"[6]  The Board must provide an indication that it considered evidence favorable to Chen, and if such evidence is rejected, an explanation as to why.[7]

Chen argues that the Board improperly rejected evidence of recent population campaigns in Fujian Province.  Chen submitted what appear to be internal government

---

[3] 8 C.F.R. § 1003.2(c)(2).

[4] 8 C.F.R. § 1003.2(c)(3)(ii).

[5] On appeal, Chen appears to have abandoned any challenge to the Board's finding that he did not show *prima facie* eligibility for CAT relief.

[6] *Zhu*, 744 F.3d at 272 (citations omitted) (quoting *Huang v. Att'y Gen.*, 620 F.3d 372, 388 (3d Cir. 2010)).

[7] *See id.*; *Ji Cheng Ni v. Holder*, 715 F.3d 620, 631 (7th Cir. 2013) ("The BIA must consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted.") (internal quotation marks omitted).

documents from other towns and cities within Fujian Province that purport to describe recent population campaigns to meet quotas for IUD implants, sterilizations, and abortions. Several of the documents underscore the need to sterilize those who are likely to violate or have violated the one-child policy, including Chinese nationals who have children abroad. The Board noted, however, that Chen is from "Qingqiao Village, Heshang Town, Changle City, and he has not shown that the reports and regulations from other villages, towns, and cites are applicable to him." App. 5.

In *Zhu v. Attorney General*, this Court noted that the Board's discounting of province-level evidence is inconsistent with past BIA decisions allowing an applicant to establish eligibility for relief with evidence from their "'local province, municipality, or other locally-defined area.'"[8] As in *Zhu*, because the Board disregarded province-level evidence, which may corroborate Chen's claim of enhanced enforcement and substantiate his fear of forced sterilization, we will remand for the Board to consider whether the documents from Chen's home province are authentic and, if so, why they do not warrant reopening the proceedings.

The Board also did not meaningfully consider documents that appear to be from Chen's home city, Changle. While the Board properly rejected the expert opinion offered to authenticate certain documents purportedly from Changle City in 2008,[9] there is no indication that the Board considered more recent documents purportedly from the Chang

---

[8] 744 F.3d at 275-76 (quoting *In re J-H-S-*, 24 I. & N. Dec. 196, 197-98 (BIA 2007)).

[9] *Id.* at 276-77 (declining to disturb the Board's decision not to rely on expert opinion because, "[u]nlike other evidence it inexplicably discounted, the BIA explained why it rejected reliance on the expert's opinion").

Le City Population and Family Planning Leadership Group and the Chang Le City Population and Family Planning Bureau. These documents purport to describe new population control campaigns in Changle City, and include details on the sanctions and rewards local officials receive based on whether they meet their quotas for abortions and sterilizations. App. 370-413; 602-628; 844-851. The Board offered no substantive commentary regarding this evidence, which may corroborate Chen's claims of inherently coercive policy implementation. As such, we will remand for the Board to consider whether the documents from Chen's home city, aside from the documents included in the expert report, are authentic and, if so, why they do not warrant reopening the proceedings.

Chen further argues that the Board did not fully consider the 2009 and 2010 Annual Reports of the Congressional-Executive Commission on China ("CECC"). The Board cited the CECC reports to support its conclusion that administrative punishments continue to be used to enforce the family planning policy. Puzzlingly, however, the pages the Board cites to plainly state that forced sterilization and forced abortions also are used to enforce the policy. App. 107, 134 ("Violators of the policy are routinely punished with fines, and in some cases, subjected to forced sterilization, forced abortion, arbitrary detention, and torture."). In the 2010 CECC Report, there is an entire sub-section labeled "Coercive Sterilization." App. 110-111. In the 2009 CECC Report, the first line of the sub-section "Implementation: Abortion and Sterilization" reads: "The use of coercive measures in the enforcement of population planning policies remains commonplace despite provisions for the punishment of official abuse outlined in the PRC

6

Population and Family Planning Law." App. 136. Moreover, under the sub-section "Incentives for Citizens and Officials," the 2009 CECC Report notes that, "[m]any provinces link job promotion with an official's ability to meet or exceed population planning targets, thus providing a powerful structural incentive for officials to employ coercive measures in order to meet population goals." App. 139.

The Board's seemingly selective consideration of these reports was improper. In *Zhu*, this Court criticized an identical conclusion regarding enforcement methods. We questioned "[w]hy the BIA found the [CECC] Reports' discussion of certain 'administrative punishments' and coercive tactics to be persuasive, but [apparently] found the Reports' discussion of forced sterilizations and abortions in Fujian Province not to be persuasive."[10] As in *Zhu*, we will remand to the Board for its full consideration of the CECC reports.

Lastly, Chen argues that the Board's decision must be vacated because the Board applied the wrong legal standard in determining that he had not established *prima facie* eligibility for asylum and withholding of removal. The Board's decision, however, rested on its conclusion that Chen's evidence failed to establish a material change in country conditions. This conclusion alone is dispositive.[11] The Board never commented on the *prima facie* standard for asylum or withholding, nor did it conclude that Chen had failed

---

[10] *Id.* at 278 (alterations in original) (internal quotation marks omitted).

[11] *See INS v. Abudu*, 485 U.S. 95, 104-05 (1988) (identifying three independent grounds on which the Board may deny a motion to reopen: (1) the movant failed to establish a *prima facie* case for the relief sought; (2) the movant failed to introduce previously unavailable, material evidence, as required by 8 C.F.R. § 1003.2(c); or (3) the movant would not be entitled to discretionary relief, such as asylum, even if the motion were granted).

to make such a showing—unlike its conclusion that Chen failed to make a *prima facie* showing under CAT. We will not infer what the Board did not say. We remand only for the Board to meaningfully consider Chen's evidence and to provide a more thorough explanation as to whether the evidence establishes a material change in country conditions. We express no opinion on the merits of the motion.

## III.

For the foregoing reasons, we will grant the petition for review, vacate the Board's order denying the motion to reopen, and remand to the Board for further consideration consistent with this opinion.