**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1453
_____


HUI YUN ZHOU,
                              Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. 096-241-539)
Immigration Judge: Donald Vincent Ferlise
_____

Submitted Under Third Circuit L.A.R. 34.1(a):
January 19, 2022
_____

Before: JORDAN, RESTREPO, and PORTER,
*Circuit Judges*.

(Filed: January 25, 2022)

_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

PORTER, *Circuit Judge*.

Hui Yun Zhou, a citizen of the People's Republic of China, petitions for review of a Board of Immigration Appeals ("BIA") order refusing to reopen her deportation proceeding. We will deny her petition for review.

I

A

Zhou came from China as a visitor two decades ago. Zhou overstayed her visa, so she was placed in removal proceedings. She asked for political asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). *Zhou v. Att'y Gen.*, 206 F. App'x 237, 237 (3d Cir. 2006). To show she was eligible for asylum as a political refugee, Zhou claimed she was forced to abort a pregnancy under China's family planning policies and would risk involuntary sterilization and a fine if she returned to China. 8 U.S.C. § 1101(a)(42).

Zhou had trouble keeping her story straight, though. The Immigration Judge ("IJ") that heard her case denied all relief, ordered her deportation, and found that Zhou had "deliberately fabricated" her asylum claim based on her lack of credibility and demeanor as well as contradictions in the record evidence. 8 C.F.R. § 1208.20(a)(1). As the IJ warned Zhou, this last finding would make Zhou "permanently ineligible for any benefits under" the Immigration and Nationality Act. 8 U.S.C. § 1158(d)(6).

Zhou appealed to the BIA, challenging among other things the IJ's conclusion that her asylum case was deliberately fabricated. But when it came to briefing the appeal, her attorney, Tahir Mella, barely mentioned that separate issue. Mella's only reference to the

2

deliberate-fabrication finding was a fleeting assertion that the IJ had made "no finding that the abortion certificate was fabricated" and "no finding that [Zhou's] testimony regarding her forced abortion was inconsistent or fabricated." A.R. 149.

The BIA affirmed the IJ's deportation order and dismissed Zhou's appeal in 2005. The BIA specifically affirmed the IJ's conclusion that Zhou had deliberately fabricated her asylum claim. With that "final determination," the IJ's finding that Zhou "knowingly made a frivolous application for asylum" became "effective." 8 U.S.C. § 1158(d)(6). Going forward, Zhou would be ineligible for benefits under the Immigration and Nationality Act.

Zhou petitioned for review, represented by a new attorney, Marco Pignone. *Zhou*, 206 F. App'x at 237. We denied the petition. *Id.* at 239. We noted that "the petition for review recites that Zhou seeks review of all three aspects of the BIA decision: denial of asylum; withholding of removal . . .; and relief under the CAT." *Id.* at 238. We concluded that "we ha[d] no basis to reject the findings of either the IJ or the BIA." *Id.* at 239.

While Zhou's petition for judicial review was pending, Pignone filed Zhou's first motion asking the BIA to reopen or reconsider the deportation order. The motion did not specifically challenge—or even mention—the deliberate-fabrication finding. The BIA denied the motion.

B

Meanwhile, Zhou's husband was violently robbed three times. He received a "U visa" for cooperating with investigators. 8 U.S.C. § 1101(a)(15)(U)(i). Zhou then sought to join the U-visa application as his spouse. 8 U.S.C. § 1101(a)(15)(U)(ii)(II). But U.S.

3

Citizenship and Immigration Services denied this immigration benefit based on the final determination that Zhou had fabricated her asylum claim. Feeling the sting of that denial, Zhou eventually sought a way to challenge the deliberate-fabrication finding once again, in 2019. Zhou had two options.

First, "[a]n alien ordered to leave the country has a statutory right to file a motion to reopen his removal proceedings." *Mata v. Lynch*, 576 U.S. 143, 144 (2015) (citing 8 U.S.C. § 1229a(c)(7)(A)). But Zhou faced two procedural hurdles if she wanted to assert that right. For one, "[a]n alien may file one motion to reopen proceedings." 8 U.S.C. § 1229a(c)(7)(A). Zhou had already filed "one" motion. For another, an alien must generally move to reopen within ninety days of the final order of removal, and by that measure, Zhou was fourteen years late. *Id.* § 1229a(c)(7)(C)(i). So Zhou's motion appeared to be number-barred and time-barred.

Zhou had a second option, though. At the time, "the BIA's regulations provide[d] that, separate and apart from acting on the alien's motion, the BIA may reopen removal proceedings 'on its own motion'—or, in Latin, sua sponte—at any time." *Mata*, 576 U.S. at 145 (italics omitted) (quoting 8 C.F.R. § 1003.2(a) (2015)).[1] The term sua sponte is a "misnomer," as these reopenings are often prompted by an alien. *Darby v. Att'y Gen.*, 1 F.4th 151, 164 n.3 (3d Cir. 2021). A request for sua sponte reopening in substance invites the BIA to ignore procedural hurdles and grant reopening as a matter of residual

---

[1] The rule was amended effective "January 15, 2021" to withdraw BIA's discretionary authority to reopen on its own motion except to correct clerical mistakes. 85 Fed. Reg. 81,588, 81,588, 81,591, 81,654 (Dec. 16, 2020), *codified at* 8 C.F.R. § 1003.2(a).

executive discretion. *Id.* Given this tension with statutory requirements and the need for finality, the BIA has said sua sponte reopening is "an extraordinary remedy reserved for truly exceptional situations." *In re G-D-*, 22 I. & N. Dec. 1132, 1134 (BIA 1999).

Zhou elected to follow this second path. Zhou asked the BIA "to issue a sua sponte order." A.R. 34 (italics omitted). Zhou never asserted a right to file a second motion to reopen. Zhou thus asked the BIA for an extraordinary remedy reserved for exceptional cases. Zhou argued this extraordinary discretion was warranted because, in her view, the BIA would have reversed the IJ's deliberate-fabrication finding if only her attorney at the time, Mella, had adequately briefed the issue before the BIA. Zhou also pointed to her husband's cooperation with investigators and her son's good academic performance. To explain her delay, Zhou claimed she "was not aware of the law regarding frivolousness until recently when [her latest attorney] explained it to her, and was not aware of the [allegedly incompetent] nature of [Mella's] assistance." A.R. 37.

The BIA declined Zhou's invitation to reopen. *Matter of H-Y-Z-*, 28 I. & N. Dec. 156, 162 (BIA 2020). The BIA concluded that Zhou did "not demonstrate an exceptional situation that would warrant the exercise of our discretionary authority to reopen [the] proceedings." *Id.* at 161. Zhou, the BIA reasoned, should not get exceptional relief after flouting a final removal order for fourteen years. *Id.*

The BIA did not stop there, though. While Zhou never asked for equitable tolling, the BIA concluded that Zhou was not eligible for equitable tolling because she was not

prejudiced by Mella's performance and because Zhou had not been diligent in seeking reopening. *Id.* at 161–62.[2]

This petition for review followed.

## II

The BIA had jurisdiction to consider Zhou's request to reopen sua sponte under 8 C.F.R. § 1003.2(a) (2020). When "the BIA rejects the alien's [statutory] motion to reopen because it comes too late or because it falls short in some other respect, the courts have jurisdiction to review that decision." *Mata*, 576 U.S. at 148. "We [generally] review the BIA's denial of a motion to reopen for abuse of discretion and will not disturb the BIA's determination unless it is arbitrary, irrational, or contrary to law." *Darby*, 1 F.4th at 159. But when the BIA refuses to reopen proceedings on its own motion, our review is even more limited. We will review these refusals only when "the BIA relies on an incorrect legal premise" or "when the BIA has constrained itself through 'settled practice to the point where an irrational departure from that practice might constitute abuse.' " *Id.* at 164 (quoting *Sang Goo Park v. Att'y Gen.*, 846 F.3d 645, 651–52 (3d Cir. 2017)).

## III

## A

We first clarify what is in front of us. Both parties have briefed the case as if Zhou had requested equitable tolling to file a second motion. But as we have explained, Zhou

---

[2] The BIA separately concluded that Zhou was not eligible for U-visa status because she had fabricated her asylum application, but that was hardly news. *Matter of H-Y-Z-*, 28 I. & N. Dec. 156, 160–61 (BIA 2020). Zhou does not challenge this part of the order.

only asked the BIA to reopen sua sponte. Zhou's "stated choice of procedural vehicle" was a request that the BIA reopen proceedings on its own motion, and we must respect that stated choice, not make our own. *Mata*, 576 U.S. 143, 152 (Thomas, J., dissenting). Assuming, however, that the BIA could and did permissibly recast Zhou's request as, in the alternative, one asserting a right to file a second motion to reopen, we must affirm the BIA for two reasons.

First, Zhou never argued that Pignone, the attorney who filed the prior motion to reopen, was ineffective. Without that showing, precedent compels denial of her motion. *Luntungan v. Att'y Gen.*, 449 F.3d 551, 558 (3d Cir. 2006). In *Luntungan*, we held that an alien seeking to file a successive motion to reopen must show that the attorney who filed the prior motion defrauded him or was ineffective. *Id.* at 557–58. Zhou does not allege that Pignone was ineffective. Zhou directs her arguments at Mella's alleged ineptitude, but Mella had nothing to do with her prior motion to reopen. With no allegation that Pignone was defective when he filed Zhou's first motion to reopen, we would have to "conclude that the [first] motion gave" Zhou "a fair chance to be heard." *Id.*[3] "In our adversarial system of adjudication, we follow the principle of party presentation." *United*

_____

[3] Zhou never addresses whether the BIA may equitably toll the statutory prohibition on successive motions, an open question in our circuit. *See Luntungan v. Att'y Gen.*, 449 F.3d 551, 557 (3d Cir. 2006) ("We have not issued a precedential opinion deciding whether *numerical* limits on motions to reopen may be equitably tolled, and we note that other circuits have stated different views on the issue."). It is not obvious that equitable tolling applies. Equitable tolling usually applies to timing rules and prevents the running of the clock. *See id.* at 552 n.1; *accord Tapia-Martinez v. Gonzales*, 482 F.3d 417, 422 (6th Cir. 2007).

*States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). We cannot supply a counsel-ineffectiveness argument that Zhou herself has not made.

Second, we find no abuse of discretion in the BIA's conclusion that Zhou failed to show due diligence. "Due diligence must be exercised over the entire period for which tolling is desired. This includes both the period of time before the ineffective assistance of counsel was or should have been discovered and the period from that point until the motion to reopen is filed." *Alzaarir v. Att'y Gen.*, 639 F.3d 86, 90 (3d Cir. 2011) (quotation marks and citation omitted). The BIA accurately concluded that Zhou "has . . . not explained why she apparently made no inquiries regarding the frivolousness finding or took any steps to contest it between the years 2005 and 2019." *Matter of H-Y-Z-*, 28 I. & N. Dec. at 162. Zhou was aware the 2005 determination made her ineligible for benefits. *Id.* at 160–61. And Zhou applied for derivative status under her husband's U visa on January 27, 2014. *Id.* at 160. Zhou never explains how she exercised diligence throughout this entire period. Zhou's sole response is that she only learned about the relevant legal standards and Mella's alleged ineptitude when she hired a new lawyer shortly before filing her second motion. But this shows dereliction, not diligence. While Zhou may "have more than the average difficulty in negotiating the shoals of American law," equitable tolling requires evidence of diligence throughout. *Mahmood v. Gonzales*, 427 F.3d 248, 253 (3d Cir. 2005). Zhou presented no evidence of diligence throughout.

Given that Zhou failed to show due diligence, the BIA's alternative conclusion that Zhou was not prejudiced by Mella's briefing before the BIA is of no moment. There

can be no equitable tolling without due diligence. *Id.* at 252–53. So any legal error on that score would be harmless.

B

Zhou's challenge to the BIA's refusal to reopen sua sponte must fail, as the refusal is unreviewable. *Darby*, 1 F.4th at 164–65. Zhou asserts the BIA committed a reversible legal error by concluding that Mella's inadequate briefing was not prejudicial. It is unlikely that Mella's ineffective assistance alone would be enough to show "exceptional" circumstances. But in any event, the BIA did not rely on an erroneous legal premise when it found Mella's performance not prejudicial, so we cannot review its refusal to reopen sua sponte.

As we explained in *Calle-Vujiles v. Ashcroft*, sua sponte reopenings are committed to the BIA's discretion by law and so are presumptively unreviewable, much like agency enforcement decisions. 320 F.3d 472, 474 (3d Cir. 2003) (citing *Heckler v. Chaney*, 470 U.S. 821 (1985)); *see also* 5 U.S.C. § 701(a)(2) (Judicial review provisions do not apply when "agency action is committed to agency discretion by law"). *Calle-Vujiles* aligns with the Supreme Court's decision in *ICC v. Brotherhood of Locomotive Engineers*, 482 U.S. 270 (1987). There, the Supreme Court held that an agency's refusal to reconsider reopening an order allowing railroads to use non-union workers, allegedly in violation of law, was unreviewable based on a "tradition of nonreviewability . . . with regard to refusals to reconsider" orders for error. *Id.* at 282. It did not matter that the agency decision "discussed the merits . . . at length," as "[i]t would hardly be sensible to say that the Commission can genuinely deny reconsideration only when it gives the matter no

9

thought; nor to say that the character of its action . . . depends upon whether it chooses to disclose its reasoning." *Id.* at 280–81. The only thing that mattered was that the case involved an agency's discretionary refusal to reconsider reopening an order for legal error, without new evidence or changed circumstances showing the agency's prior decision was wrong. *Id.* at 278. And Zhou wants to challenge the frivolousness finding without presenting any new material evidence or changed circumstances showing the original order was wrong.

We have reviewed discretionary refusals to reopen when the BIA "misperceive[s] the legal background for its exercise of discretion." *Pllumi v. Att'y Gen.*, 642 F.3d 155, 163 (3d Cir. 2011) (quotation marks omitted) (BIA's mistaken belief that it lacked authority to consider adequacy of healthcare in the country of removal as a basis for sua sponte reopening was reviewable); *see also Desai v. Att'y Gen.*, 695 F.3d 267, 269 (3d Cir. 2012) (BIA's decision that post-departure bar precluded sua sponte reopening was reviewable). But here the BIA applied a correct legal standard and found Zhou's prejudice argument wanting based on the facts in the original record, essentially because it thought its original decision was right. We will not second-guess the BIA's application of a correct legal premise to facts found in the original record.

\*      \*      \*

We will deny the petition for review.