NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1241
_____

CHEN XU HUA,
a/k/a Chen Hua,
a/k/a Xiu Hua Chen,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of a Decision of the Board of Immigration Appeals
(A074-163-412)
Immigration Judge: Annie S. Garcy
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 26, 2015
_____

Before: GREENAWAY, JR., SCIRICA and ROTH, *Circuit Judges*.

(Filed: March 10,2016)

_____

OPINION[*]

_____

GREENAWAY, JR., *Circuit Judge*.

Chen Xu Hua ("Chen")[1] petitions for review of the Board of Immigration Appeals' ("BIA") dismissal of her appeal. For the following reasons, we will deny the petition for review.

## I.    Background

Chen, a native and citizen of the People's Republic of China from Fujian Province, entered the United States in November 1995 without a valid immigrant visa or other entry document. Shortly thereafter, in April 1996, she applied for asylum based on her unfavorable experiences with China's population control policies. In July 1996, Chen voluntarily withdrew her asylum application and agreed to depart the United States by April 30, 1997. At that time, an Immigration Judge ("IJ") issued an order of exclusion to take effect if Chen did not depart the United States by the agreed upon date. Chen did

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] As Chinese natives list their surnames first, we will refer to the petitioner as "Chen" throughout this opinion. *See Wang Zong Xiao v. Reno*, 81 F.3d 808, 812 n.2 (9th Cir. 1996).

2

not depart the United States. Four years later, in August 2000, Chen filed an untimely motion to reopen her exclusion proceedings based on a favorable change in the immigration laws material to her situation. Chen's motion to reopen was denied by an IJ based on Chen's unreasonable delay in filing the motion.

Over ten years after her first motion to reopen, in January 2011, Chen filed a second untimely motion to reopen based on her conversion to Christianity in 2010. Although Chen's motion was both number and time barred, Chen argued that her procedural defects should be excused due to changed country conditions in China. In support of her motion to reopen, Chen submitted extensive documentation about the Chinese government's treatment of Christian worshippers at unregistered churches (also known as "underground" churches). In a February 8, 2011 order, an IJ found that Chen's motion to reopen was based on a change in personal circumstances—Chen's conversion to Christianity—rather than a change in country conditions, and denied Chen's motion as untimely. Chen filed a timely appeal to the BIA, which remanded to the IJ for consideration of "whether the voluminous documentation that the applicant submitted relating to country conditions in China demonstrates that there has been a change in the treatment of Christians in China since the time of the 1996 hearing." App. vol. II at 80.

On remand, the IJ again denied Chen's motion to reopen on March 29, 2013, finding that Chen had not established a material change in country conditions in China. Chen filed a motion to reconsider, which the IJ denied on April 25, 2013. Chen appealed

both of the IJ's decisions to the BIA, which found no error in the IJ's decisions and dismissed Chen's appeal on December 31, 2014. Chen filed a timely petition for review with this Court on January 26, 2015.

## II.    Jurisdiction and Standard of Review

The BIA had jurisdiction over Chen's motion to reopen under 8 C.F.R. § 1003.2 and we have jurisdiction to review the BIA's denial of her motion to reopen under 8 U.S.C. § 1252. We review decisions of the BIA on motions to reopen for abuse of discretion and will only disturb the BIA's denial of a motion to reopen where it was "arbitrary, irrational, or contrary to law." *Guo v. Ashcroft*, 386 F.3d 556, 562 (3d Cir. 2004) (quoting *Tipu v. INS*, 20 F.3d 580, 582 (3d Cir. 1994)). We review the BIA's legal conclusions under a de novo standard of review. *Borges v. Gonzales*, 402 F.3d 398, 404 (3d Cir. 2005). We treat the BIA's factual determinations as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)). Because the BIA affirmed and specifically referenced the decision of the IJ,[2] we will review the referenced sections of the IJ's opinion. *Li Hua Yuan v. Att'y Gen. of the U.S.*, 642 F.3d 420, 425 (3d Cir. 2011).

_____

[2] *See* App. vol. II at 4 ("As noted by the Immigration Judge, the background evidence submitted by the applicant does not establish that there has been a material change in country conditions in China regarding the treatment of Christians (I.J. at 2-4).").

**III.   Analysis**

Generally, "a party may file only . . . one motion to reopen proceedings" and "[a] motion to reopen must be filed within 90 days of the date of entry of a final administrative order of . . . exclusion."  8 C.F.R. § 1003.23(b)(1).  Chen concedes that her present motion to reopen does not comply with these rules as she filed a prior motion to reopen in 2000 and filed her present motion to reopen over thirteen years after her order of exclusion became effective.  However, these particular number and time restrictions in § 1003 do not apply if Chen's motion to reopen is "based on changed country conditions arising in the country of nationality" and Chen's evidence of such conditions "is material and was not available and could not have been discovered or presented at the previous proceeding."  *Id.* § 1003.23(b)(4)(i).

Chen advances three main arguments on appeal:  (1) the IJ applied an incorrect legal standard to her motion to reopen; (2) the IJ ignored evidence about the recent government targeting of underground Christian church members; and (3) the IJ ignored evidence of persecution of Christians in Fujian Province.  We address each argument in turn.

Chen characterizes the legal standard that the IJ applied as follows:  "The IJ . . . said that once there has been repression of underground Christians in China, one cannot establish changed country conditions."  Br. of Pet'r at 5–6.  In support of her position,

5

Chen cites passages of the IJ's opinion that focus on continuity in the Chinese government's general policy of persecuting Christians between the time of Chen's asylum petition and motion to reopen. *See, e.g.*, App. vol. II at 48 ("Applicant has yet to file clear evidence . . . that the treatment of Christians who are arrested is not a continuation of a policy already employed in 1996."). In so focusing, Chen argues that the IJ did not evaluate whether there had been an intensification of repression of underground Christians in China. We disagree.

At the outset of the IJ's opinion, the IJ stated the correct legal standard on a motion to reopen: "It is important to note that a change in circumstance is not the same as a continuation of persecution against Christians; Applicant must prove that Christians in 2013 are treated differently than how they were treated in 1996." *Id.* at 46; *see Pllumi v. Att'y Gen. of the U.S.*, 642 F.3d 155, 161 (3d Cir. 2011) (concluding that the BIA did not abuse its discretion where evidence suggested that "the conditions described have persisted"). Accordingly, in denying Chen's motion to reopen, the IJ explicitly concluded that Chen presented no evidence that Christians in Fujian Province were being treated differently at the time of her motion to reopen than they were being treated in 1996.

We interpret the IJ's comments about Chen's failure to provide evidence of a change in China's general policy towards Christians to reflect one avenue through which the IJ evaluated whether Chen had shown changed country conditions—not the only

6

avenue. Indeed, in concluding that Chen had not demonstrated changed country conditions, the IJ also examined purported evidence of intensification of repression of underground Christians, including an "increase in arrests of Christians leading up to the Beijing Olympics" and a "crackdown on house churches in China in 2010." App. vol. II at 47. We therefore find no error in the legal standard used by the IJ to evaluate Chen's motion to reopen.

Chen next argues that the IJ failed to consider whether the Chinese government's recent targeting of underground Christian church members, as opposed its prior practice of targeting underground church leaders, could establish a material change in country conditions. However, the evidence that Chen cites in support of her argument documents conditions in Provinces of China other than Chen's hometown Fujian Province. The IJ appropriately dismissed this evidence as immaterial to Chen's motion to reopen because Chen "[was] not from those Provinces and [did] not claim that she would live there in the future." *Id.*

Finally, Chen argues that the IJ failed to consider certain evidence that she submitted documenting the recent persecution of Christians in Fujian Province. Chen's evidence describes the disruption of church services, forced church closings, and the abduction of a church worker. Chen contends that her evidence establishes changed country conditions because the document she submitted describing conditions in China in 1995 around the time of her initial asylum application "does not mention any closing of

7

churches or any other forms of persecution of underground Christians in Fujian

Province."[3]  Br. of Pet'r at 10.

However, this single document that Chen submitted about country conditions in

1995 examines conditions in China for Christians at the country-wide level.  In this

context, the failure of the document to specifically refer to conditions in Fujian Province

does not help Chen's cause.  Rather, it prevents us from assessing whether her evidence

of recent conditions in Fujian Province establishes a material change in country

conditions between the time of her motion to reopen and her initial asylum application.

As we have held, the burden of proof on a motion to reopen is on the alien to establish

eligibility for the requested relief.  *Pllumi,* 642 F.3d at 161.  Under these circumstances,

we cannot find that it was "arbitrary" or "irrational," *Guo*, 386 F.3d at 562, for the IJ to

conclude that Chen "provide[d] no evidence that Christians in her hometown or native

area of China [were] being treat[ed] differently at the present time than in 1996."  App.

---

[3] While the 1995 document may not specifically reference church closings in Fujian Province, it notes:  "There continued to be credible reports . . . of efforts by authorities in some areas to rein in activities of the unapproved Catholic and Protestant movements, including raiding and closing a number of unregistered churches."  App. vol. II at 519 (alteration in original).  The only specific information for Fujian Province that the document provides suggests that Fujian Province may have been one of these regions as it notes that there were "[a] growing number of [asylum seekers] from  . . . Fujian Province . . . claim[ing] persecution on account of religion" and goes on to state that "[m]ost asylum applications on account of religion are by claimed members of the unsanctioned Christian churches in China."  *Id.* at 518.

8

vol. II at 48.[4]

**IV.    Conclusion**

Based on the administrative record presented to us, we find that the BIA did not abuse its discretion in dismissing Chen's appeal.  For the foregoing reasons, we will deny the petition for review.

---

[4] For substantially the same reasons she advances with respect to her motion to reopen, Chen argues that the IJ's denial of her motion for reconsideration was an abuse of discretion.  We thus find no error in the IJ's denial of her motion for reconsideration.